SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Carl Hreha (A-115-11) (070222)**

**Argued October 21, 2013 -- Reargued January 6, 2014 -- Decided May 15, 2014**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

The issues in this appeal are whether police officers made any promises of leniency or other beneficial treatment to defendant during custodial interrogation to elicit his confession and whether, under the totality-of-the-circumstances test, the defendant voluntarily waived his Miranda rights.[1]

The incident underlying defendant's convictions occurred in the Office of the Attorney General (OAG) at the Hughes Justice Complex in Trenton, where defendant worked from 2003 through 2006 as a technician in the information technology (IT) department. On September 11, 2006, all of the OAG's network printers began to repeatedly print a document depicting a confederate flag and a threatening, racist message. A second, similar printing incident occurred a few hours later. Kiran Patel, an OAG IT security manager and one of defendant's supervisors, attempted to stop the printing and determine the source of the problem. Patel testified that, at first, defendant had not assisted with the IT staff's collection of the printed documents; instead, defendant and another member of the IT staff had been "kind of giggling" and acting "giddy." Patel informed State Police Sergeant David Dias about the specific internet protocol (IP) address that was determined to be the source of the print orders and about his discovery of a phony media access control (MAC) address. In addition, Patel named as suspects defendant and the other IT staff member with whom defendant had been "giggling."

On Friday, October 13, 2006, Sergeant Dias questioned defendant. The questioning was not electronically recorded. For five to ten minutes, Dias and defendant discussed defendant's typical duties at work. According to Dias's later testimony, he then read aloud the warnings on a Miranda card and asked defendant to read and sign it. Defendant testified that Dias had not read the card to him and that defendant had only read it quickly before signing it. The card did not contain a written Miranda waiver provision. Defendant eventually admitted composing the document and sending it to printers from his OAG computer. He later alleged that his confession had been induced by the officers' promises of leniency and threats that he would be arrested and held for two or three days, including the weekend. In addition, defendant claimed that the officers agreed to allow him to exit the building without handcuffs if he confessed and suggested that he would not lose his job with the OAG. Defendant was arrested and escorted to Dias's patrol car, where he was handcuffed, and Dias then drove him to a nearby State Police unit. After being fingerprinted and photographed, he agreed to provide an audio-recorded statement. At the start of the recording, which lasted eight minutes, defendant was informed of his Miranda rights. Defendant stated that he understood those rights and, when asked if he had been "coerced or threatened or intimidated at any point [that day] at all," defendant replied in the negative. The questioning continued and defendant again admitted that he had been responsible for the printing of offensive documents at the OAG. Defendant then signed another Miranda card and again responded in the negative when asked whether he had been threatened or coerced.

On October 19, 2007, defendant was indicted on one count of second-degree computer theft and one count of fourth-degree bias intimidation. Defendant moved to suppress his statements to the police. The trial court held a Miranda hearing during which defendant testified that his initial confession during the interrogation at the OAG had been induced by the officers' promises of leniency, including the offer of an "easy sentence" and participation in a pretrial intervention (PTI) program. Dias testified that he was unable to remember whether any such promises had been made. The trial court denied defendant's suppression motion, finding that defendant's confession had not been induced by promises of leniency and further finding that Dias had denied any threats or promises of leniency. Defendant's confession was admitted in evidence and the jury convicted him on both counts of the indictment.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

The Appellate Division reversed defendant's convictions in an unpublished opinion, concluding that the statements should have been suppressed. The majority of the panel held that the State had failed to prove beyond a reasonable doubt that defendant had voluntarily waived his Miranda rights. The panel determined that the trial judge had erroneously concluded that Dias had denied extending any promises to defendant; in actuality, Dias had merely testified that he possessed no recollection of whether any promises had been made. One member of the appellate panel dissented. By virtue of that dissent, the State appealed as of right on the issue of whether defendant's confession was voluntarily offered. See R. 2:2-1(a)(2).

**HELD**: The record lacks sufficient credible evidence to support the trial court's finding that defendant was not offered leniency in exchange for his confession. The matter is remanded for a new Miranda hearing to allow a trial court to make fresh credibility and factual findings, after which the trial court may decide what weight, if any, to assign to any promises of leniency when it applies the totality-of-the-circumstances test.

1. When faced with a trial court's admission of police-obtained statements, an appellate court should typically defer to the trial court's credibility and factual findings. An appellate court's review of the trial court's findings is limited to confirming only that "those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007). Occasionally, however, a trial court's findings may be so clearly mistaken "that the interests of justice demand intervention and correction." State v. Johnson, 42 N.J. 146, 162 (1964). A confession obtained during a custodial interrogation may not be admitted in evidence unless law enforcement officers first informed the defendant of his or her constitutional rights. Once a defendant has been so advised, the defendant may waive his or her Miranda rights and confess, but that waiver must be "voluntary, knowing, and intelligent." See Miranda, supra, 384 U.S. at 444. In New Jersey, the State shoulders the burden of proving beyond a reasonable doubt that a defendant's confession was actually volunteered and that the police did not overbear the will of the defendant. Determining whether the State has met that burden requires a court to assess "the totality of the circumstances, including both the characteristics of the defendant and the nature of the interrogation." State v. Galloway, 133 N.J. 631, 654 (1993). A law enforcement officer's promise of leniency – and in particular whether such a promise may have overborne a defendant's will – is properly viewed as one additional factor to be considered in light of the totality of the surrounding circumstances. (pp. 16-19)

2. The trial court's refusal to suppress defendant's confession was based on defendant's audio-recorded testimony, defendant's hearing testimony, and Dias's hearing testimony. It appears, however, that the trial court misapprehended the nature of the testimony provided at the Miranda hearing. First, instead of denying that the officers had extended any promises to defendant, Dias merely asserted that he could not recollect whether any promises had been made. Second, the trial court oversimplified defendant's allegations when it concluded that he falsely confessed merely to avoid remaining in jail over the weekend. Defendant testified that the officers had made additional promises, including that he would be admitted to PTI, which promise could have been especially attractive, as it would have meant that defendant could avoid traditional criminal prosecution. Third, the recorded statement relied on by the trial court captured only eight minutes of a lengthy interrogation; defendant alleges that he was offered leniency long before he provided the recorded statement. The Court thus concludes that the trial judge misconstrued the testimony elicited at the Miranda hearing and, thus, the court's credibility findings appear unsupported by sufficient credible evidence in the record. However, absent firsthand observations of the witnesses, this Court is not fully informed in deciding whether the interrogating officers extended promises of leniency. Therefore, the matter is remanded for a new Miranda hearing to allow a trial court to make fresh credibility and factual findings. Similarly, the Court is unable to assess the totality of the circumstances so as to conclude whether the State has proven beyond a reasonable doubt that defendant's confession was provided voluntarily. In addition, the record does not contain sufficient information for the Court to decide what weight should be assigned to any promises of leniency that may have been extended to defendant. The trial court may decide what weight, if any, to assign to that factor when it applies the totality-of-the-circumstances test. (pp. 19-22)

The judgment of the Appellate Division is **REVERSED IN PART** and the matter is **REMANDED** to the trial court for a new Miranda hearing.

**JUSTICES LaVECCHIA, ALBIN, and PATTERSON, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion. CHIEF JUSTICE RABNER and JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

CARL HREHA,

    Defendant-Respondent.


        Argued October 21, 2013
        Reargued January 6, 2014 – Decided May 15, 2014

        On appeal from the Superior Court, Appellate
        Division.

        Brian J. Uzdavinis, Deputy Attorney General,
        and Carol M. Henderson, Assistant Attorney
        General, argued the cause for appellant
        (John J. Hoffman, Acting Attorney General of
        New Jersey, attorney).

        David W. Fassett argued the cause for
        respondent (Arseneault, Whipple, Fassett &
        Azzarello, attorneys).

        Joshua C. Gillette argued the cause for
        amicus curiae Association of Criminal
        Defense Lawyers of New Jersey (Gibbons,
        attorneys; Mr. Gillette, Lawrence S.
        Lustberg, Mary Frances Palisano, and Jillian
        Stein, on the brief).


    JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

    This case involves an appeal from defendant Carl Hreha's

convictions for second-degree computer theft, contrary to

N.J.S.A. 2C:20-25(b), and fourth-degree bias intimidation,

contrary to N.J.S.A. 2C:16-1.  Defendant asserts that the trial court improperly refused to suppress a confession that he had supplied involuntarily during a custodial interrogation.  He argues that interrogating officers elicited his confession with promises of leniency and other beneficial treatment.  The trial court, however, found that the officers had extended defendant no such promises, and it concluded that defendant had voluntarily waived his Miranda[2] rights.  That factual finding and conclusion were later challenged on appeal.

In a split decision, a majority of the Appellate Division panel held that the trial court's factual finding that the officers had not made offers of leniency was not supported by sufficient credible evidence in the record.  On that basis, the majority concluded that the State had failed to prove beyond a reasonable doubt that defendant had voluntarily waived his Miranda rights.  The Appellate Division thus reversed both of defendant's convictions.  One member of the panel dissented, instead concluding that the totality of the circumstances supported the trial court's conclusion that defendant had voluntarily confessed.

The State appealed as of right to this Court.  R. 2:2-1(a)(2).  We are now asked to determine whether defendant

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

voluntarily offered his confession.  That inquiry requires us to first consider the propriety of affording deference to the trial court's factual finding that the interrogating officers did not promise defendant leniency or other beneficial treatment.  A review of the record makes clear that the trial court possessed a mistaken understanding of the evidence provided at the <u>Miranda</u> hearing, particularly the testimony elicited from Sergeant David Dias, one of the interrogating officers.  Although the officer testified that he could not remember whether any offers of leniency had been extended to defendant, the court determined that the officer had denied making any such promises.  Because of that misunderstanding, we conclude that the record lacks sufficient credible evidence to support the trial court's finding that defendant was not offered leniency in exchange for his statement.  Therefore, we reverse the Appellate Division's holding that the State failed to prove beyond a reasonable doubt that defendant had voluntarily waived his <u>Miranda</u> rights and remand to the trial court for a new <u>Miranda</u> hearing on defendant's motion to suppress his confession.

I.

The incident underlying defendant's convictions occurred in the Office of the Attorney General (OAG) at the Hughes Justice Complex in Trenton, where defendant worked from 2003 through

3

2006 as a technician in the information technology (IT) department. Just after noon on September 11, 2006, all of the OAG's network printers began to repeatedly print a document depicting a confederate flag and a threatening, racist message. A second, similar printing incident occurred a few hours later. Kiran Patel, an OAG IT security manager and one of defendant's supervisors, attempted to stop the printing and determine the source of the problem. Patel testified that, at first, defendant had not assisted with the IT staff's collection of the printed documents; instead, defendant and another member of the IT staff had been "kind of giggling" and acting "giddy."

The IT staff eventually stopped the printing of the document and later determined that two print orders had caused the two incidents of continuous printing. Those print orders had originated at a computer on one of the four floors of the Hughes Justice Complex on which OAG employees worked. After reviewing the OAG network logs, Patel and a consultant determined that a single internet protocol (IP) address[3] within the OAG network had been the source of the print orders. That IP address was a valid address within the OAG network, but Patel determined that it had not been assigned to any specific OAG device. Patel's review of the network logs also disclosed the

---

[3] Patel analogized an IP address to a telephone number, explaining that computers require unique IP addresses to communicate with other computers and printers over a network.

media access control (MAC) address[4] assigned to the device that had sent the print orders. Patel later determined that the address was "phony"; it had been altered and did not belong to any OAG device.

The IT department reported the incident to the State Police and sent the hard drives from two OAG computers to the State Police laboratory. On September 18, Patel informed State Police Sergeant David Dias about his discovery of the IP address and phony MAC address. Patel also named two employees as suspects -- defendant and the other IT staff member with whom defendant had been "giggling" on the date of the incident.

On Friday, October 13, 2006, following an IT meeting in an OAG conference room, Patel informed defendant that a representative from the State Police wanted to speak with him. Defendant remained in the conference room, and Dias entered and told defendant that he desired to ask him some questions. The questioning that followed was not electronically recorded, despite the availability of resources for such recording at the OAG. For five to ten minutes, Dias and defendant discussed defendant's typical duties at work. According to Dias's later testimony, he then read aloud the warnings on a Miranda card and asked defendant to read and sign it. Defendant testified that

---

[4] Patel compared a MAC address to the VIN number of a car, in that it displays the make, model, and serial number of the network card associated with a device.

5

Dias had not read the card to him and that defendant had only read it quickly before signing it. The card did not contain a written Miranda waiver provision.

Dias asked whether defendant knew why he was there, to which defendant responded, "not yet." Defendant then stated that he believed the questioning was related to an employment discrimination complaint that he had filed against one of his supervisors, Maria Cardiellos. Dias replied that the discrimination complaint was not the topic he wished to discuss. Dias then asked defendant a series of questions about the printing incident. At some point during the questioning, defendant and Dias were joined by Detectives Stanley Field, Charles Allen, and Kevin Zebro.[5] Defendant testified that the four officers took turns asking him questions.

At first, Defendant denied playing any role in the creation of the racist document or its transmission to the printers. Instead, he explained that he thought the incident had been designed to make the IT department look bad and that he was pleased if the incident had reflected poorly on Cardiellos.

Defendant later testified that he "felt cornered" during the questioning, and characterized the officers' demeanor as

---

[5] Defendant testified that he did not realize Field, Allen, and Zebro were police officers because they did not so identify themselves; instead he believed they were higher-ranking employees in the IT department.

6

becoming increasingly accusatory.  He testified that the officers clearly wanted him to confess and "started to pressure [him] into giving them more information about something [he] felt [he] didn't know."  The officers continued their questioning, and defendant eventually admitted that he had composed the document and sent it to the printers from his OAG computer.

Defendant later alleged that his confession had been induced by the officers' promises of leniency, including an offer that defendant could participate in a pretrial intervention (PTI) program instead of facing traditional criminal prosecution.  Defendant has further asserted that the officers told him that he would be arrested and held for two or three days, including the weekend, if he did not provide a statement.  Moreover, if he confessed, they agreed to allow him to exit the building without handcuffs and suggested that he would not lose his job with the OAG.

Defendant was arrested at approximately 3:00 p.m.  He was escorted to Dias's patrol car, where he was handcuffed, and Dias then drove him to a nearby State Police unit.  Upon arrival, defendant was fingerprinted and photographed.  Defendant then agreed to provide an audio-recorded statement.  That recording began at 3:27 p.m. and lasted for eight minutes.  At the start of the recording, Field informed defendant of his Miranda

7

rights.  Defendant stated that he understood those rights and, when asked if he had been "coerced or threatened or intimidated at any point [that day] at all," defendant replied in the negative.

The questioning continued, and Field prompted defendant to explain what had happened on September 11, 2006.  Defendant again admitted that he had been responsible for the printing of offensive documents at the OAG on that date.  Field requested specifics about the incident, and defendant described how he had sent the document to multiple OAG printers using a program that masked the MAC address and prevented anyone from tracing his IP address.  Moreover, he stated that his intention had been to "create some grief" for his supervisor, Cardiellos.  At first, defendant stated that he had been given the document, but he later denied having conspired with any other person to accomplish the printing.

After the questioning was completed, defendant signed another Miranda card and again responded in the negative when asked whether he had been "threatened or coerced into . . . speaking to [the officers] in providing th[e] taped statement."

Dias drove defendant back to the Hughes Justice Complex and released him on his own recognizance.

## II.

8

On October 19, 2007, defendant was indicted in Mercer County on two counts related to the September 11, 2006, incident: second-degree computer theft, contrary to N.J.S.A. 2C:20-25(b), and fourth-degree bias intimidation, contrary to N.J.S.A. 2C:16-1.

After pleading not guilty, defendant moved to suppress his statements to the police. The trial court held a Miranda hearing, pursuant to N.J.R.E. 104, on December 23, 2009. At that hearing, defendant's recorded statement was played for the court, and a transcript was admitted into evidence. Both Dias and defendant provided testimony about the police interrogation.

Defendant testified that his initial confession during the interrogation at the OAG had been induced by the officers' promises of leniency. According to defendant, the officers had said that, if he admitted what he had done and explained to them how he had done it, they would try to offer him an "easy sentence." Defendant testified that they eventually offered him a PTI sentence, a concept with which he had been unfamiliar, but which the officers had compared to "a slap on the wrist." Moreover, the officers had allegedly informed defendant that they would neither walk him out of the building in handcuffs nor detain him over the weekend if he provided the information they desired. Defendant testified that he had not wanted to spend the weekend in jail because he ran his own landscaping business

9

on the weekends.  On cross-examination, defendant also testified that, during the interrogation, he had asked to speak with his father, but the officers had refused his request and continued their questioning.

Dias was cross-examined at the <u>Miranda</u> hearing about whether he had extended any promises to defendant during that initial interrogation at the OAG.  He responded that he was unable to remember whether any such promises had been made:

> [Defense Counsel]: Do you remember any of the officers indicating to Mr. Hreha what possibly could happen to him if he was arrested, that he could be handcuffed and brought out of the building that way?
>
> [Dias]: I don't remember.
>
> Q: Do you recall if any of the officers indicated that you did have options, as you told us, you certainly could arrest him and handcuff him, but you could also in exercise of discretion, walk him out and handcuff him outside?
>
> A: I don't remember.
>
> Q: Do you remember indicating that or hearing anyone indicate to Mr. Hreha, that if he were arrested it would be likely that he'd be locked up somewhere until Monday?
>
> A: I don't remember that either, counselor.
>
> Q: [Was] there any discussion of what potentially could happen to Mr. Hreha as a result of being convicted of this offense? Let me clarify that a little bit.  Amongst the officers and Mr. Hreha in that conference room?
>
> A: I don't remember.

10

Q: Do you know if any of the officers, yourself included, discussed PTI or pretrial intervention with him as a possibility?

A: I don't remember.

Q: So if someone did, one of the other troopers, you wouldn't be able to tell us because you simply don't remember, correct?

A: Not based on the time frame what's in my report, I would not be able to recollect.

Following the Miranda hearing, the trial court denied defendant's suppression motion in an order dated March 5, 2010. That order was accompanied by a written opinion, in which the trial judge expressed his conclusion that defendant's confession had not been induced by promises of leniency.

Reaching that conclusion required the court to evaluate the credibility of both defendant and Dias. The court characterized the conflict in their hearing testimony as follows: "Defendant's testimony that he was promised PTI in exchange for a statement is directly contradicted by Sgt. Dias, who denies offering PTI to Defendant and, additionally, denies having threatened to embarrass Defendant by walking him out of the building in handcuffs." The trial judge then explained that he found defendant's testimony incredible because it was unlikely that defendant would have "confessed to printing the thousands of copies of a racist flyer from his computer because he understood he would be released from custody that Friday afternoon so he could finish a large landscaping job scheduled

11

for that weekend."  In contrast, the court credited Dias's testimony because Dias had "testified in a straightforward manner on direct and conceded certain points on his cross-examination."

As additional support for denying the suppression motion, the trial court also cited defendant's recorded statement, observing that there had been "no discussions about any promise of PTI during the statement."

Defendant's confession was admitted in evidence during his four-day jury trial in April 2010.  The jury convicted defendant on both counts of the indictment.  On August 6, 2010, the trial court sentenced defendant to an aggregate term of five years' imprisonment with a twenty-month period of parole ineligibility.

Defendant appealed the denial of his motion to suppress. He argued that his confession had been involuntary for two reasons.  First, the officers had improperly offered him PTI and other lenient treatment.  Second, his request to speak with his father had constituted an invocation of his right to remain silent.[6]

The Appellate Division reversed defendant's convictions in an unpublished opinion.  The majority of the panel held that the State had failed to prove beyond a reasonable doubt that

---

[6] Defendant also raised other issues that are not relevant to this appeal.

12

defendant had voluntarily waived his Miranda rights. In particular, the majority found the totality of the circumstances indicated that defendant may have been induced to confess as a result of promises of leniency. The majority explained that the trial court's credibility findings had been unsupported by sufficient credible evidence in the record. Specifically, the trial judge had erroneously concluded that Dias had denied extending any promises regarding PTI to defendant; in actuality, Dias had merely testified that he possessed no recollection of whether any officer had made such a promise. Regarding defendant's contention that he had invoked his right to remain silent by requesting to speak with his father, the majority explained that defendant had not raised that issue at trial and thus refused to address it.

One member of the panel dissented. The dissenting judge acknowledged that Dias had not contradicted defendant's claim that the officers had offered him lenient treatment in exchange for his confession. However, she maintained that the trial court's credibility findings were nevertheless supported by sufficient evidence in the record. Moreover, the totality of the circumstances supported the trial court's conclusion that the State had proven beyond a reasonable doubt the voluntariness of defendant's Miranda waiver.

By virtue of the dissent in the Appellate Division, the State appealed as of right on the issue of whether defendant's confession was voluntarily offered.  See R. 2:2-1(a)(2).  We granted the motion of the Association of Criminal Defense Lawyers of New Jersey (ACDL) to participate as an amicus curiae.

### III.

### A.

The State urges this Court to reverse the Appellate Division's decision and uphold the trial court's denial of defendant's motion to suppress.  It asserts that the trial court correctly concluded that defendant had voluntarily waived his Miranda rights when he twice confessed.  The State argues that this Court should defer to the trial court's findings and further contends that, even if this Court determines that the trial court's credibility findings were flawed, we should assess the totality of the circumstances and conclude that defendant voluntarily confessed.  The State maintains that, even if the officers promised PTI or other leniency, any such offers must have actually induced defendant to confess, which did not occur.

### B.

Defendant counters that the Appellate Division majority properly reversed his convictions and held that the State had not proven beyond a reasonable doubt that defendant had voluntarily waived his Miranda rights.  The State did not

14

provide any evidence to contradict defendant's testimony that the officers had promised lenient treatment in exchange for his confession. Specifically, their alleged promises had included that he would not be handcuffed when he was removed from the Hughes Justice Complex, would not be jailed for the weekend, would be admitted to PTI, and would not lose his job. Defendant asserts that those promises induced his confession. Defendant acknowledges that this Court has abandoned a per se rule that promises of leniency render a subsequent confession involuntary in favor of a totality-of-the-circumstances test. Instead, he argues that, when courts assess the totality of the circumstances, they should afford greater weight to promises of leniency, which are especially likely to prompt false confessions.

C.

Amicus curiae, the Association of Criminal Defense Lawyers of New Jersey, also urges this Court to assign greater weight to promises of leniency as one factor considered under the totality-of-the-circumstances test. Citing a variety of articles and social science research, ACDL argues that promises of leniency are especially likely to induce false confessions. Therefore, ACDL also asks this Court to acknowledge that, even absent additional coercion, specific promises of leniency can render involuntary a subsequent confession.

15

IV.

When faced with a trial court's admission of police-obtained statements, an appellate court should engage in a "searching and critical" review of the record to ensure protection of a defendant's constitutional rights. See State v. Pickles, 46 N.J. 542, 577 (1966). That review, however, does not generally involve "an independent assessment of the evidence as if [the reviewing court] were the court of first instance." State v. Locurto, 157 N.J. 463, 471 (1999). Instead, an appellate court should typically defer to the trial court's credibility and factual findings, recognizing that the trial court's findings are often "substantially influenced by [its] opportunity to hear and see the witnesses and to have the 'feel' of the case." State v. Johnson, 42 N.J. 146, 161 (1964).

An appellate court's review of the trial court's findings is limited to confirming only that "those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (internal quotation marks omitted). If that standard is satisfied, the reviewing court's "task is complete[,] and it should not disturb the result, even though . . . it might have reached a different conclusion were it the trial tribunal." Johnson, supra, 42 N.J. at 162. Occasionally, however, a trial court's findings may be so clearly mistaken "that the interests of justice demand

16

intervention and correction." Ibid. In such instances, an appellate court properly reviews "the record as if it were deciding the matter at inception and make[s] its own findings and conclusions." Ibid. Furthermore, legal conclusions are subject to de novo review. State v. Gandhi, 201 N.J. 161, 176 (2010).

A confession obtained during a custodial interrogation may not be admitted in evidence unless law enforcement officers first informed the defendant of his or her constitutional rights. See Miranda, supra, 384 U.S. at 444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 706. Once a defendant has been so advised, the defendant may waive his or her Miranda rights and confess, but that waiver must be "voluntary, knowing, and intelligent." Ibid.

In New Jersey, the State shoulders the burden of proving beyond a reasonable doubt that a defendant's confession was actually volunteered and that the police did not overbear the will of the defendant. See State v. Galloway, 133 N.J. 631, 654 (1993). Determining whether the State has met that burden requires a court to assess "the totality of the circumstances, including both the characteristics of the defendant and the nature of the interrogation." Ibid. This Court has instructed that factors relevant to that analysis include "the suspect's age, education and intelligence, advice concerning

17

constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature, and whether physical punishment and mental exhaustion were involved." Ibid. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047-48, 36 L. Ed. 2d 854, 862 (1973)). Moreover, courts applying the totality-of-the-circumstances test should look to whether the defendant has had previous encounters with law enforcement and the period of time between when Miranda rights were administered and when defendant confessed. See State v. Timmendequas, 161 N.J. 515, 614 (1999).

A law enforcement officer's promise of leniency is properly viewed as one additional factor to be considered in light of the totality of the surrounding circumstances. See State v. Pillar, 359 N.J. Super. 249, 271-72 (App. Div.), certif. denied, 177 N.J. 572 (2003). A court may conclude that a defendant's confession was involuntary if interrogating officers extended a promise so enticing as to induce that confession. See State v. Fletcher, 380 N.J. Super. 80, 89 (App. Div. 2005). When deciding whether a promise of leniency may have overborne a defendant's will, a court ought consider the circumstances surrounding any such promise. See Pillar, supra, 359 N.J. Super. at 271. Factors relevant to that analysis include, but are not limited to, "the nature of the promise, the context in which the promise was made, the characteristics of the

18

individual defendant, whether the defendant was informed of his rights, and whether counsel was present." Ibid. (citations omitted) (quoting United States v. Pinto, 671 F. Supp. 41, 57 (D. Me. 1987)). Those considerations should be assessed qualitatively, not quantitatively, and the presence of even one of those factors may permit the conclusion that a confession was involuntary. Id. at 272.

### V.

In the setting of the legal framework under which this case must be decided, we now turn to the facts of this case and consider whether the trial court correctly admitted defendant's statement as a voluntarily offered confession.

The trial court refused to suppress defendant's confession after concluding that defendant had voluntarily provided that confession and had not been promised leniency or other beneficial treatment in exchange for his statement. Those conclusions were based upon three sources of evidence that had been presented at the Miranda hearing: defendant's audio-recorded statement, defendant's hearing testimony, and Dias's hearing testimony. However, it appears that the trial court misapprehended the nature of the testimony provided at the Miranda hearing.

First, and most significantly, the trial court mischaracterized the testimony provided by Dias. The court

19

summarized Dias's testimony as including his denial that the officers had extended any promises to defendant.  Finding that his testimony directly contradicted defendant's version of events, the trial court chose to credit Dias's testimony over defendant's.  However, Dias's only testimony regarding such promises was provided in response to questions by defense counsel during cross-examination.  Instead of denying that the officers had extended any such promises, he merely asserted that he could not recollect whether any promises had been made.

Second, the trial court discredited defendant's testimony. In addition to finding that Dias's testimony contradicted defendant's version of events, the trial court also refused to believe that defendant would have falsely confessed merely to avoid remaining in jail over the weekend.  That characterization, however, oversimplified defendant's allegations.  Defendant testified that the officers had made additional promises, including that he would not be handcuffed upon leaving the Hughes Justice Complex and that he would be admitted to PTI.  The offer of PTI, in particular, could have been especially attractive, as it would have meant that defendant could avoid traditional criminal prosecution.

Third, the trial court explained that defendant's audio-recorded statement included no mention of any promises of leniency, and defendant denied being subjected to coercion or

20

threats.  That statement, however, captured only eight minutes of a lengthy interrogation; defendant alleges that he was offered leniency long before he provided the recorded statement. Moreover, although defendant twice denied having been coerced or threatened, the officers did not ask whether he had been offered leniency in exchange for his confession.

For the foregoing reasons, we conclude that the trial judge misconstrued the testimony elicited at the Miranda hearing. Thus the court's credibility findings appear unsupported by sufficient credible evidence in the record.  However, this Court has not had the benefit of any "opportunity to hear and see the witnesses" and to develop "the 'feel' of the case."  See Johnson, supra, 42 N.J. at 161.  Absent such firsthand observations, we are not fully informed in deciding whether the interrogating officers extended promises of leniency.  The record on appeal does not include sufficient information to allow us to make such a factual finding.  Therefore, we remand this case for a new Miranda hearing to allow a trial court to make fresh credibility and factual findings.

Because we make no finding regarding whether defendant was promised leniency and other beneficial treatment, we are similarly unable to assess the totality of the circumstances so as to conclude whether the State has proven beyond a reasonable doubt that defendant's confession was provided voluntarily.

Nevertheless, we reiterate that, if the officers extended any promises to defendant, those promises should be considered in light of the totality of the surrounding circumstances. Defendant and amicus curiae ACDL argue that such promises should be afforded greater weight when compared with other relevant factors. The record before us, however, does not contain sufficient information for us to decide what weight should be assigned to any promises of leniency that may have been extended to defendant. On remand, the parties are free to introduce expert testimony regarding whether offers of leniency are especially likely to induce false confessions; thus the trial court may decide what weight, if any, to assign to that factor when it applies the totality-of-the-circumstances test.

## VI.

For these reasons, we reverse in part the Appellate Division judgment based on the holding that the State failed to prove beyond a reasonable doubt that defendant had voluntarily waived his Miranda rights, and we remand for a new Miranda hearing. In light of the history of this case, we direct, in an abundance of caution, that a different judge be assigned to conduct the new Miranda hearing so that credibility assessments may be made anew.

JUSTICES LaVECCHIA, ALBIN, and PATTERSON, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE FERNANDEZ-

22

VINA's opinion.  CHIEF JUSTICE RABNER and JUDGE CUFF (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-115                        SEPTEMBER TERM 2011
ON APPEAL FROM _____Appellate Division, Superior Court_____

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

          v.

CARL HREHA,

      Defendant-Respondent.

DECIDED _____May 15, 2014_____
          Justice LaVecchia_____ PRESIDING
OPINION BY _____Justice Fernandez-Vina_____
CONCURRING/DISSENTING OPINION BY _____
DISSENTING OPINION BY _____

| CHECKLIST | REVERSE IN PART/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | -------------------------- | -------------------- |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | ------------------------ | -------------------- |
| | 5 | |