# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4839-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

G. A. L.,[1]

     Defendant-Appellant.

_____

Submitted January 24, 2022 – Decided March 23, 2022

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-11-3192.

Joseph E. Krakora, Public Defender, attorney for appellant (Margaret McLane, Assistant Deputy Public Defender, of counsel and on the briefs; John Boyle, on the briefs).

Grace C. MacAulay, Acting Camden County Prosecutor, attorney for respondent (Maura Murphy

---

[1]  We use initials and pseudonyms to protect the privacy and preserve the confidentiality of the victims and this proceeding.  N.J.S.A. 2A:82-46(a); R. 1:38-3(c)(9).

Sullivan, Special Deputy Attorney General/Acting
Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant was found guilty of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b); one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); and fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1(a). The jury found defendant not guilty of four counts of second-degree endangering the welfare of a child; three counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(3)(c); and third-degree terroristic threats, N.J.S.A. 2C:12-3(a).[2]

Following the denial of the State's motion for a discretionary extended term of imprisonment and merger, the trial court sentenced defendant to a nine-year prison term with a four-year-and-six-months parole disqualifier for second-degree endangering and a consecutive eighteen-month prison term with a nine-month parole disqualifier for obstruction.

On appeal, defendant argues:

> POINT I
>
> THE TRIAL COURT ERRED IN REFUSING TO
> SUPPRESS     PORTIONS     OF     THE     POLICE

---

[2] Prior to trial, the State dismissed the charge of second-degree prostitution, N.J.S.A. 2C:34-1(b)(7).

A-4839-18

INTERROGATION FOLLOWING THE REPEATED INVOCATION OF THE RIGHTS TO SILENCE AND COUNSEL. THE COURT FURTHER ERRED IN ALLOWING THE INVOCATIONS OF THE RIGHT TO SILENCE TO BE PLAYED TO THE JURY.

POINT II

THE TRIAL COURT ERRED IN ADMITTING HEARSAY EVIDENCE REGARDING [NICOLE'S] INITIAL ACCUSATIONS AGAINST [DEFENDANT] AND IN FAILING TO ISSUE ANY LIMITING INSTRUCTIONS TO THE JURY ON THE USE OF [NICOLE'S] COMPLAINTS. (NOT RAISED BELOW).

POINT III

THE TRIAL COURT PLAINLY ERRED IN FAILING TO ISSUE THE ["]FALSE IN ONE[,] FALSE IN ALL["] INSTRUCTION EVEN THOUGH THE COMPLAINING WITNESS'S CREDIBILITY WAS A KEY ISSUE AT TRIAL. (NOT RAISED BELOW).

POINT IV

EVEN IF ANY OF THE TRIAL ERRORS WOULD BE INSUFFICIENT TO WARRANT REVERSAL STANDING ALONE, THE CUMULATIVE EFFECT OF THOSE ERRORS WAS TO DENY DEFENDANT DUE PROCESS AND A FAIR TRIAL.

POINT V

ALTERNATIVELY, A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE TRIAL COURT ERRONEOUSLY BELIEVED THAT IT COULD NOT CONSIDER THE FAIRNESS OF

THE AGGREGATE SENTENCE IN DETERMINING WHETHER CONSECUTIVE SENTENCES WERE REQUIRED.

After careful review of the record and the applicable law, we are unpersuaded that defendant's convictions should be reversed, but we reverse his sentence and remand for resentencing for the trial court to explain the fairness of imposing consecutive sentences.

I

In addressing defendant's arguments in the order presented, we begin with his contention that the trial court erred in its Rule 104 ruling that only a part of his statement to police was inadmissible at trial. The court held that defendant invoked his right to remain silent when he said, "that's all I can give you" and that his other remarks that followed were in violation of Miranda.[3] The Rule 104 hearing revealed the following testimony.

Camden County police received a report from S.J. (Sara) that defendant, her live-in boyfriend, had sexual relations with her sixteen-year-old daughter, N.J. (Nicole). Officers Edwin Cortez and Alexander Palmer went to defendant's job at a junk yard in a marked vehicle. Upon seeing the officers, defendant fled but was captured and arrested.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

At the police station, defendant was interviewed by Detectives Tawand Smith and Shy Williams. The interview was audio-recorded. Smith read defendant his rights using the department's standardized Miranda forms, which he signed in her presence, ultimately waiving his rights. After being told he was being investigated for domestic violence, defendant disclosed he had been in a relationship with Sara for "a year and five months" and was living with her four children and her granddaughter. He stated that three days before, he and Sara argued about Nicole, who told Sara "[t]hat [he] wanted her" sexually. He denied the allegations and left to go sleep in the junkyard where he worked. That next morning, Nicole visited him at the junkyard to some retrieve items from him. She apologized for what she said to her mother, which he accepted. According to defendant, Nicole said, "[n]othin' happened, period."

When defendant sought to discuss Sara's husband, Williams cut him off stating they were not interested. Defendant then said, "[a]lright, I don't care, I told you that's it, man, that all I'm (indiscernible) that's it. That's all . . . that's it. That's it." After defendant stated, "I told you everything[,] I told you everything," the detectives had defendant listen to a portion of a "surreptitious recording from [Nicole]" that she had taken of her conversation with him at the junkyard. Williams asked defendant what he was talking about when

referencing a portion of the recording where he said, "[i]f you didn't want you to touch me, you should have told me," to which defendant responded, "[t]ouching." Defendant added that if they thought he had sex with Nicole, they had to "prove it" and should "[t]ake her to the hospital." After being told Nicole was taken to the hospital, he stated that if they find no evidence he had sex with her, they have no case against him. Regarding Nicole's claims that he touched her, defendant stated, "It ain't like I had sex with her, I didn't have sex with her, if that's what you're thinkin'."

At this point, the supervising officer, Sergeant Coley,[4] entered the interview room to ask defendant if he was "done talking" because he "constantly ha[d] said, [']that's it,[']" and Coley wanted to know if defendant was interested in continuing to give a statement. Defendant responded, "([i]ndiscernible) says, I already give you."

After reaffirming his <u>Miranda</u> rights and again denying having sex with Nicole, defendant said, "I gave you a statement, that's all I can do." Sergeant Coley thanked defendant and terminated the interrogation.

> At the hearing's conclusion, the court rendered a bench decision. Parsing defendant's statement, the court held that defendant invoked his right to remain silent when he said, "'that's all I can give you,' . . . and everything

---

[4] Sergeant Coley's first name is not mentioned in the record.

A-4839-18

after that [was] in violation of <u>Miranda</u>." The court continued, ruling that the earlier statement, where [defendant] says, "Y'all got me here, okay, . . . that's it," is an invocation of the right [to remain silent], because clarification is asked by the investigator, when the investigator says, "What's it?" And [defendant] says, "I told you everything, I told you everything."

The court found further that

[r]ather than saying, I'm done talking. . . . [W]here [defendant] says, "Nah, that's it, that's all I can give you," in response to the question, "Are you interested in . . . giv[ing] us a statement?" [Defendant replies,] "Nah, that's it, that's all I can give you," he is invoking his right to remain silent.

Defendant's comments "after that should be excluded as violating <u>Miranda</u>." The court determined that prior to that invocation, defendant's comments were "admissible as . . . voluntary and knowing statement[s], given the fact that he was read his rights," and by initialing the rights form signified that he understood his rights. The court ended by finding there was nothing coercive about his interrogation that would make his statement involuntary.

Defendant argues that the trial court "had no basis to find that [his] statements before [Sergeant Coley's] intervention were not an invocation when both [she] and [he] said at the time that they were," specifically when he "told the police more than fourteen times that he was done talking by saying 'that's it' or 'that's all' or 'I told you everything.'" Relying on <u>State v. Alston</u>, 204 N.J. 614

(2011), he contends that these statements were his unambiguous invocations of "his right to silence" before her intervention and, thus, should not have been admitted. He further argues that even if his statements prior to Sergeant Coley's intervention were ambiguous, the officers should have either terminated the interrogation or asked clarifying questions to ascertain whether he intended to invoke his right to silence and counsel.

"[T]he Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, guarantees the right against self-incrimination . . . ." State v. W.B., 205 N.J. 588, 604-05 (2011) (footnote and citations omitted). "Inherent in every Fifth Amendment analysis is the question of whether the statement was voluntary, and, independently, whether the law enforcement officers taking it complied with Miranda." Id. at 605. The State has the affirmative duty to prove beyond a reasonable doubt, "both that the defendant's statement was voluntary and, if custodial, that the defendant was advised of his rights and knowingly, voluntarily and intelligently waived them." Id. at 602 n.3.

When reviewing "a trial court's admission of police-obtained statements," we "engage in a 'searching and critical' review of the record to ensure protection of a defendant's constitutional rights." State v. Maltese, 222 N.J. 525, 543

(2015) (quoting State v. Hreha, 217 N.J. 368, 381-82 (2014)). "We do not independently assess evidence as if we are the trial court." Ibid. (citing Hreha, 217 N.J. at 382). Rather, we "typically defer to the trial court's credibility and factual findings." Hreha, 217 N.J. at 382. Such "findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Tillery, 238 N.J. 293, 314 (2019) (quoting State v. A.M., 237 N.J. 384, 395 (2019)). "However, we owe no deference to conclusions of law made by lower courts in suppression decisions, which we instead review de novo." State v. Boone, 232 N.J. 417, 426 (2017) (citing State v. Watts, 223 N.J. 503, 516 (2015)).

Evidence obtained in violation of Miranda must be suppressed at trial. State v. Hartley, 103 N.J. 252, 262 (1986). Whether a defendant invoked the right to remain silent is determined under the totality of the circumstances. Maltese, 222 N.J. at 545. An invocation of the right to remain silent must be "scrupulously honored." Hartley, 103 N.J. at 255-56 (citing Michigan v. Mosley, 423 U.S. 96 (1975)). If the invocation is ambiguous, the police officer may only ask clarifying questions about whether the defendant meant to invoke the right to remain silent. State v. Johnson, 120 N.J. 263, 283 (1990). Only after clarifying an ambiguous invocation of the right to remain silent can

authorities proceed with an interrogation.  State v. S.S., 229 N.J. 360, 384, 386 (2017).

Where the totality of the circumstances demonstrates that the defendant exercised his right to remain silent or to counsel, whether ambiguously or unambiguously, the Hartley bright-line rule requires Miranda warnings to be readministered.  Hartley, 103 N.J. at 267.

Applying these principles, we conclude defendant had invoked his right to remain silent prior to the moment determined by the trial court, but the court's ruling was harmless error.  The record reflects that the first time defendant used the phrases "that's it" and "that's all" was when the detectives informed him that they were not interested in speaking about Sara's husband.  Prior to that point, defendant primarily believed he was arrested for an outstanding warrant.  After the detectives informed him that they were not interested in speaking about Sara's husband, he explained how Nicole came to his job to apologize and retrieve Sara's pocketbook, which Sara suspected he had taken.  As the detectives continued to ask him questions, defendant voluntarily acknowledged waiving his rights, stating, "I gave up my right to talk to you. . . . Okay, that's it.  That's it, man.  I gave you my right.  I didn't do nothin' wrong."  Moments later, he referenced the possibility of returning to Sara's home to get his

belongings, stating that he "just want[ed] to get [his] shit. That's it man. . . . 'cause y'all got me here. Okay, that's it. That's it. That's it."

When defendant desired for the officers to "turn [him] loose" and that he "want[ed] this resolved" upon learning that Nicole was in the hospital, he stated, "I'll get me a lawyer." (Emphasis added). From there, defendant stated, "if she said I touched her, Okay then. That's it, that's it . . . because . . . she said, 'touch me . . . .' It ain't like I had sex with her, I didn't have sex with her, if that what you're thinkin'." These comments, along with others, were made before Sergeant Coley questioned defendant to clarify that he wanted to invoke his right to remain silent. When defendant stated he would get a lawyer, the interrogation should have ended or he should have been asked questions necessary "to clarify whether [he] intended to invoke his right to silence." S.S., 229 N.J. at 383. Because this was not done, defendant's statements thereafter should have been suppressed.

Although the statements made after defendant stated he will get a lawyer were erroneously admitted, the court's ruling constituted harmless error. Prior to defendant's invocation of his right to counsel, he voluntarily admitted to "[t]ouching" Nicole after the detectives played her surreptitious recording for him. That properly admitted statement, together with Nicole's testimony that

11

she was sexually touched and defendant's recorded statement, were sufficient for the jury to find him guilty of fourth-degree criminal sexual contact and second-degree endangering the welfare of a child.

## II

In Point II, defendant argues, for the first time on appeal, that the trial court erred in allowing the jury to hear hearsay statements regarding Nicole's accusations against defendant which calls for reversal of his conviction and a new trial. He first maintains that Sara and Officer Cortez "were [erroneously] permitted to testify about [Nicole's] initial out-of-court accusations against [defendant]." Second, after the court sustained defendant's objection to the State's question to Nicole concerning what she told her mother about defendant, the State then asked Nicole, without objection, what was the result of the conversation, to which she replied defendant was told to move out of Sara's home. Third, Sara was permitted to testify that because "[Nicole] told [her] that [defendant] violated her" and "she felt uncomfortable [with him] living at [her] home," Sara "told [defendant] he had to go." Fourth, Officer Cortez's was allowed to testify about taking a "report for . . . sexual assault" from Nicole against defendant. Defendant contends the unjust result caused by the erroneous

admission of the testimonies was compounded by the court's failure to give any limiting instruction.

"Evidentiary rulings made by the trial court are reviewed under an abuse-of-discretion standard." State v. Scharf, 225 N.J. 547, 572 (2016) (citing Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)). On the other hand, evidentiary issues not objected to at trial are subject to the plain error rule; that is, "error possessing a clear capacity to bring about an unjust result and which substantially prejudiced the defendant's fundamental right to have the jury fairly evaluate the merits of his defense." State v. Irving, 114 N.J. 427, 444 (1989) (quoting State v. Thornton, 38 N.J. 380, 396 (1962)). In a jury trial, the possibility of such an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). Defendant carries the burden of showing plain error. State v. Morton, 155 N.J. 383, 421 (1998).

We conclude that none of the challenged testimony constitutes hearsay, therefore, neither error nor unjust result occurred from their admission. Hearsay is an out-of-court statement used to prove the truth of the matter asserted. N.J.R.E. 801(c). Hearsay statements are inadmissible unless they fall within an exception. N.J.R.E. 802. If an out-of-court statement is not offered for the truth

of the matter asserted, no exception is necessary. State v. Buda, 195 N.J. 278, 292 (2008).

The testimony by Nicole, Sara, and Officer Cortez was not used to prove the truth of the matter asserted, meaning that Nicole, in fact, was uncomfortable with defendant because he had sexually touched her. Thus, there was no need for the court to provide limiting instructions to jury.

Nicole's testimony regarding her conversation with Sara was not hearsay because it was offered to show why Sara told defendant to move out and hiscompliance to her demand. Sara's testimony that Nicole told her defendant "violated her" was offered to show the development of events, specifically what led to Sara calling the police and their arrival.

Officer Cortez's testimony was offered to establish what course of action he and Officer Palmer took when asked by the prosecutor to tell the jury what happened when they responded to Sara's call. He described how he met with Nicole and Sara to get the suspect's description, his current location, and where the alleged offense occurred. His testimony was offered to explain why he and Officer Palmer wanted to speak to defendant and chased defendant when he fled, not the truth of Nicole's allegations. In addition, during cross-examination, Officer Cortez testified that when he took Nicole's sexual assault report, she was

unaware if defendant actually penetrated her sexually. This was not offered to prove that defendant had sexually penetrated her. In fact, defendant was acquitted of second-degree assault for committing an act of sexual penetration, specifically vaginal intercourse. Thus, the testimony had no bearing on defendant's conviction.

Moreover, admission of these statements did not cause reasonable doubt about the jury's verdict considering the State's strong case against defendant. Through Nicole's testimony that defendant touched her buttocks, grabbed her waist, and opened her legs, coupled with his admission that he sexually touched her, provided the jury adequate evidence to convict defendant. The fact that defense counsel made no objection after these comments were made strongly suggests that he felt "the alleged error in fact was of no moment." Macon, 57 N.J. at 337. Likewise, defense counsel's decision not to ask for a curative or limiting instruction concerning Nicole's accusations against defendant to Sara and the police suggests there was no need to advise the jury how it should consider the accusations. State v. Yough, 208 N.J. 385, 400-01 (2011). Hence, we conclude no manifest injustice occurred due to the noted testimony of Nicole, Sara, or Officer Cortez.

15

Defendant contends in Point III that because Nicole gave contradictory and evasive testimony, the trial court erred by failing to sua sponte provide the "false in one, false in all" jury charge. Again, we view defendant's contention for plain error because it was not properly raised before the trial court. R. 2:10-2.

The "false in one, false in all" charge states:

> If you believe that any witness or party willfully or knowingly testified falsely to any material facts in the case, with intent to deceive you, you may give such weight to his or her testimony as you may deem it is entitled. You may believe some of it, or you may, in your discretion, disregard all of it.
>
> [Model Jury Charge (Criminal), "False in One - False in All" (rev. Jan 14, 2013).]

The instruction is a decision left to the discretion of the trial judge, and the charge may be given where "a witness intentionally testifies falsely as to some material fact." State v. Fleckenstein, 60 N.J. Super. 399, 408 (App. Div. 1960); see also State v. Ernst, 32 N.J. 567, 583-84 (1960). Thus, "[i]nadvertent misstatements or immaterial falsehoods" do not suffice to issue the instruction. State v. Young, 448 N.J. Super. 206, 228 (App. Div. 2017) (alteration in original) (quoting State v. D'Ippolito, 22 N.J. 318, 324 (1956)).

Defendant argues Nicole provided inconsistent testimony as to whether it was her idea or her mother's suggestion to record her interaction with defendant, and if she was certain that he "engaged in penetrative sex immediately after the surreptitious recording" on her cell phone stopped due to an incoming from her mother. Because "[t]he jury was not instructed . . . that if [it] did not believe [Nicole's] testimony[,] in part, [it] could discredit her testimony in its entirety," defendant maintains his convictions must be reversed. We disagree.

There was no manifest injustice by the court's decision not to instruct the jury on "false in one, false in all." Nothing in the record evinces that Nicole's uncertainty about whether defendant sexually penetrated her after her surreptitious recording of defendant constituted an intentional falsehood. At worst, her statements were merely "inadvertent misstatements [and] immaterial falsehoods" that did not require the court to instruct the jury with the "false in one, false in all" charge. Ibid. Rather, it seems more likely that Nicole was merely unsure if defendant penetrated her. And as to whether Nicole or her mother decided to have Nicole record him, it is irrelevant to defendant's convictions.

Finally, and most importantly, the record reflects that the court essentially instructed the jury on the "false in one, false in all charge," by charging it to

17

"weigh the testimony of each witness and then determine the weight to give it. Through that process, [the jury] may accept all of it, a portion of it, or none of it." The jury was also instructed to "determine the credibility of the witnesses" through several considerations. As a result, despite defendant's failure to request the charge, the jury was adequately notified that it was their job to decide the credibility of all witnesses and determine whether a witness was willfully or knowingly testifying falsely to any of the facts testified to at trial.

Considering the jury charge in light of defendant's arguments, we are satisfied the jury was properly instructed as to their role in weighing the credibility of the testimony of all witnesses, including Nicole, defendant's accuser. See State v. Marshall, 123 N.J. 1, 145 (1991) ("[T]he prejudicial effect of an omitted instruction must be evaluated 'in light of the totality of the circumstances—including all the instructions to the jury, [and] the arguments of counsel.'" (quoting Kentucky v. Whorton, 441 U.S. 786, 789 (1979) (alteration in original))). Thus, there was no plain error, let alone any error, in the jury instructions.

IV

In Point IV, defendant contends he was deprived of a fair trial because of the trial court's cumulative errors regarding the improper admission of his

statements during his custodial interrogation, Nicole's complaints to Sara and the police, and the refusal of the court to instruct the jury on "false in one, false in all." We disagree.

When multiple errors are alleged, "the predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair." State v. Wakefield, 190 N.J. 397, 538 (2007). However, even where a defendant alleges multiple errors, "the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014). Given our conclusions that defendant has failed to demonstrate there were prejudicial trial errors, there was no cumulative effect that denied defendant a fair trial.

V

Finally, in Point V, defendant contends that in imposing consecutive sentences, the trial court erroneously "claimed that it could not consider fundamental fairness or the interests of justice, only the excerpted text from [State v.] Yarbough[, 100 N.J. 627 (1985)]," and stated that its sentencing discretion wasn't "unbridled" because it was "constrained" by the Yarbough factors. He maintains "the trial court was wrong that it could only consider the specifically enumerated Yarbough factors in exercising its discretion, and that

19

the imposition of a concurrent sentences would lead to a free crime." Defendant contends remand is necessary because the court failed to adhere to State v. Abdullah, 184 N.J. 497, 515 (2005), where our Supreme Court held the trial court's "focus should be on the fairness of the overall sentence." He further relies upon the Court's recently ruling in State v. Torres, where it pronounced that "[t]he mere identification of Yarbough factors as present when recounting the facts of [the] defendant's offenses is no substitute for the required fairness assessment," and remanded for resentencing. 246 N.J. 246, 270 (2021).

While the record demonstrates that the court adequately addressed the Yarbough factors, we are constrained to remand for resentencing to consider the fairness of defendant's sentence. When defense counsel was asked by the court why it should not exercise its discretion to impose consecutive sentences, counsel replied:

> we're already dealing with a very serious crime, a second-degree offense of [five] to [ten] years [for sexual contact,] which is serious time. . . .
>
> So, when you talk about the punishment fitting the crime, again, you have something that occurred, someone who complained to the police and the police performing their job function went to arrest [defendant].
>
> [A]nd in the course of making an arrest. . . .

20 A-4839-18

. . . .

     [Defendant] didn't have any weapons on him. He didn't get far. The officers weren't injured, right? It's that standard fourth-degree [offense]. So, what I'm saying is would it be any different if they had called the police on the same day that [defendant] touched this young woman's buttocks, they call the police the same day, and he went out the back door of the apartment and the police got him [fifty] yards away? I think it was [fifty] yards was the testimony.

. . . .

[I]f [defendant] gets a concurrent sentence[,] I don't think he's getting away with a free crime.

. . . .

     Because . . . [the police] were there to arrest him for what he was found guilty of [sexual contact and endangering the welfare of a minor].

After arguments concluded, the court stated "[c]onsecutive," without indicating why defendant's argument was unconvincing and why it was fair to impose consecutive sentences.

The State argues that <u>Torres</u> is distinguishable because, unlike defendant here, there the defendant's offenses were subject to a mandatory parole disqualifier. <u>See</u> <u>Torres</u>, 246 N.J. at 254-58 (2021). We find that distinction of no moment. The Court in <u>Torres</u> did not indicate that a fairness explanation was

21

necessary since defendant was exposed to convictions that were subject to parole disqualifiers. The Court merely stated without qualification that in a proper Yarbough sentencing assessment, the trial court must also provide "[a]n explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings." Torres, 246 N.J. at 268.

Here, the trial court did not do so. Moreover, we are not convinced that "the facts and circumstances [left] little doubt as to the propriety of the sentence imposed" that would allow us to "affirm a consecutive sentence" that had "not carefully articulate[d]" reasons. State v. Jang, 359 N.J. Super. 85, 97, 98 (App. Div. 2003). That said, we express no opinion as to the overall fairness of consecutive sentences. We leave it to the trial court to explain the overall fairness of the sentence it imposes on defendant.

Affirm as to the convictions. Reversed and remanded for sentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4839-18