**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5141-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ASA T. JONES, a/k/a ASA FERGUSON,
and ASA T. FERGUSON

     Defendant-Appellant.

_____

Submitted September 18, 2018 – Decided October 2, 2018

Before Judges Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 14-05-0503.

Joseph E. Krakora, Public Defender, attorney for appellant (Marcia H. Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah E. Elsasser, Deputy Attorney General, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from his conviction for murder, N.J.S.A. 2C:11-3(a)(1)(2), and certain persons not to have weapons, N.J.S.A. 2C:39-7(a). Defendant contends his statement to the police should have been suppressed because he was tricked and coerced into waiving his Miranda[1] rights. In addition, defendant argues his conviction should be reversed because the prosecutor misstated the definition of recklessness to the jury. We affirm.

Prior to trial, defendant moved to suppress his statement to the police, arguing it was not voluntary and intelligent. The judge conducted an evidentiary hearing on defendant's motion. The suppression hearing included a videotaped recording of defendant's interactions with the police and the testimony of one of the interviewing detectives. The recording consisted of defendant's first interview, which ended when he invoked his right to remain silent; his subsequent communications with the officers who came into the interview room to photograph defendant's injuries and remove defendant's clothing; and the second interview, during which defendant waived his Miranda rights. Detective Gregory Malesich, who conducted both interviews, testified during the suppression hearing.

---

[1]   Miranda v. Arizona, 384 U.S. 436 (1966).

A-5141-16T1

Detective Malesich testified as follows. Around 10:00 p.m. on November 17, 2013, the police received a telephone call that an individual had been stabbed and was lying in the street. Detective Malesich arrived at the scene around 11:30 p.m. By that time, the victim, who had been transported to the hospital, was pronounced dead. Defendant was arrested and taken to the police station to be interviewed.

At 2:50 a.m., after interviewing other eyewitnesses to the evening's events, Detective Malesich and another detective questioned defendant. The detectives asked defendant a number of introductory questions, informed him that they wanted to question him "about what happened," but needed to review the Miranda form with defendant before asking additional questions. In response, defendant asked about the charges and bail. Detective Malesich told defendant he was not charged with anything. Defendant stated, "[w]ell I don't want to talk about nothing." Defendant confirmed he did not wish to speak with the police without some understanding of the charges against him. As a result of defendant's statement, two minutes after the interview began, the detectives ended the questioning and left the room.

Soon thereafter, as captured on the videotape, two different officers entered the room to take pictures of defendant's injuries and collect his clothing.

3

Defendant asked these officers to explain the charges against him. The officers responded they were "just taking pictures" and were not permitted to speak with defendant because he invoked his right to remain silent. Defendant continued to protest that no one was telling him anything regarding the charges against him.

Detective Malesich and two other detectives returned to the interview room. The detectives told defendant they had to review his Miranda rights and have defendant understand those rights before they could speak with him. Defendant then authorized the detectives to review his Miranda rights "so I can know what's going on." The detectives confirmed that defendant asked them to return to the interview room to review the Miranda rights and speak with the police. Detective Malesich then read defendant his rights and presented a Miranda waiver form for defendant's signature.

Once defendant signed the form and waived his Miranda rights, the detectives asked defendant what happened. Defendant stated he was involved in a fight with the victim but did not admit to stabbing him. During the second interview, the detectives informed defendant that the victim had died.

After hearing the detective's testimony and reviewing the videotape of defendant's interviews, the judge determined defendant's waiver of his rights

was voluntary and intelligent. The judge concluded the detectives ended the first interview when defendant said he did not want to talk. However, defendant subsequently indicated he wanted to speak with the detectives. Based on the evidence, the judge determined defendant was in custody, "clearly the target of the investigation," and opined that even if the detectives did not know "the exact charges," they knew "[defendant] was going to be charged with some crime associated with the death of [the victim]." While the judge acknowledged "[d]efendant wanted to engage in conversation [with the detectives] to discover what his criminal charges were," he determined defendant's waiver of his Miranda rights was knowing and voluntary. Thus, the judge denied defendant's motion to suppress his statements to the detectives.

After denial of the suppression motion, the matter proceeded to trial. At trial, several eyewitnesses testified to seeing defendant and the victim fighting in the street. When the fight ended, the witnesses saw each man walk in the opposite direction. Defendant walked to his apartment, but returned a few minutes later according to witnesses. After defendant returned, one witness saw him stab the victim several times. Another eyewitness explained she saw what appeared to be defendant punching the victim below his waist. This witness saw "a little, tiny knife" on the street and the witness gave the knife to defendant.

A-5141-16T1

Defendant then tossed the knife into a parking lot across the street, but held a different blood-covered knife in his hand. The eyewitness testified defendant returned to his apartment building.

Three police officers who responded to the scene testified during the trial. The officers described finding the victim on the sidewalk, propped up against a telephone pole. The victim had three puncture wounds, one to his chest and two in his thigh. The victim was transported to the hospital and pronounced dead upon arrival.

After speaking with people at the scene, Detective Jules Maiorano called defendant on his cellphone and told him to turn himself in for questioning. Defendant stated he was "in Glassboro and that he needed a ride" to the police station. Shortly after this discussion with defendant, the officers received a call that there was a man running through backyards in the area. The officers found defendant running through a backyard, and ordered him to stop. Defendant stopped, and was placed under arrest.

The police obtained video surveillance from defendant's apartment building and a nearby building, which captured images of the incident. The police also collected a serrated knife blade across the street from defendant's apartment building and blood samples from the street. In addition, the police

seized a number of items from defendant's apartment, including a knife from a drying rack in the kitchen, a shirt next to the kitchen sink, and drain traps from the kitchen and bathroom sinks. While defendant was at the police station, the police removed defendant's clothing; photographed cuts and bruises on defendant's hands, back, and face; and took a buccal swab. The State's forensic laboratory found the victim's DNA on defendant's clothing and identified DNA from both men on a shirt and a knife.

The victim had bruises on his left forearm, scrapes on his elbows, and three stab wounds. One stab wound penetrated the inner thigh six-and-one-half inches and cut the femoral artery and vein, "causing massive and rapid bleeding." A second stab wound, about two inches below the first, "[s]truck soft tissues only." A third stab wound, which was "relatively superficial," was in the area of the victim's rib cage. The medical examiner identified the wound to the victim's inner thigh as life-threatening, and concluded his death was a homicide.

During the jury trial, the State played surveillance recordings from cameras mounted on or near defendant's apartment building. The State also played the recording of defendant's first and second interviews, including the

exchanges between defendant and the police that transpired between the two interrogations. The jury convicted defendant on all counts.

On appeal, defendant, through his counsel, presents the following arguments:

POINT I

> DEFENDANT'S STATEMENT SHOULD HAVE BEEN SUPPRESSED BECAUSE THE POLICE TRICKED AND COERCED HIM INTO WAIVING HIS RIGHTS, AFTER HE HAD INVOKED THEM, BY TELLING HIM THEY COULD NOT ANSWER HIS INQUIRIES ABOUT HIS STATUS UNLESS HE WAIVED HIS RIGHTS.

POINT II

> THE MURDER CONVICTION MUST BE REVERSED BECAUSE DEFENDANT MAINTAINED THAT HE ACTED RECKLESSLY, AND THE PROSECUTOR MISSTATED THE DEFINITION OF RECKLESSNESS (Not raised below).

In his pro se supplemental brief, defendant argues the following points:

POINT I

> THE STATEMENT ALLEGEDLY MADE BY DEFENDANT SHOULD HAVE BEEN SUPPRESED BECAUSE THE PROCEDURES UTILIZED BY LAW ENFORCEMENT OFFICERS, DURING THE CUSTODIAL INTERROGATION OF MR. JONES, FAILED TO COMPLY WITH <u>MIRANDA V. ARIZONA</u>, VIOLATING THE FIFTH, AND THE FOURTEENTH AMENDMENT, OF THE UNITED

8

STATES CONSTITUTION, AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION.

A. THE TRIAL COURT FAILED TO PROPERLY APPLIED THE "TOTALITY OF THE CIRCUMSTANCES" TEST IN ADMITTING THE DEFENDANT'S STATEMENT.

B. THE DEFENDANT'S WAIVER OF HIS RIGHT AGAINST SELF-INCRIMINATION WAS NOT KNOWING, VOLUNTARY AND INTELLIGENT[LY] MADE.

POINT II

MISCONDUCT BY THE PROSECUTOR DEPRIVED THE DEFENDANT OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL. U.S. CONST. AMEND. VI, XIV; N.J. CONST. ART. I, ¶¶ 1, 10.

POINT III

THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL ON THE GROUNDS THAT THE VERDICT WAS AGAINST THE WIEGHT OF THE EVIDENCE.

POINT IV

THE TRIAL COURT ERRED IN NOT DOING A FOLLOW UP COLLOLOQUY IN ADVISING DEFENDANT OF HIS RIGHT TO TESTIFY.

POINT V

THE CUMULATIVE EFFECT OF THE ERRORS COMPLAINED OF RENDERED THE TRIAL UNFAIR.

A-5141-16T1

We first address defendant's contention that the judge erred in admitting his statements to the detectives because the State failed to prove beyond a reasonable doubt that he knowingly, intelligently, and voluntarily waived his Miranda rights.

We "engage in a 'searching and critical' review of the record to ensure protection of a defendant's constitutional rights" when assessing the propriety of a trial judge's decision to admit a police-obtained statement. State v. Hreha, 217 N.J. 368, 381-82 (2014) (quoting State v. Pickles, 46 N.J. 542, 577 (1966)). Nonetheless, we defer to the trial judge's credibility and factual findings because of the judge's ability to see and hear the witnesses, and thereby obtain the intangible but crucial feel of the case. State v. Maltese, 222 N.J. 525, 543 (2015). To warrant reversal, a defendant must show the admission of the statement was error "capable of producing an unjust result." Ibid. On appeal from a trial court's decision on a suppression motion, we defer to the trial judge's findings so long as they are supported by sufficient credible evidence. State v. S.S., 229 N.J. 360, 370 (2017). We should not reverse a trial court's findings of fact based on its review of a recording of a custodial interrogation unless the findings are clearly erroneous or mistaken. Ibid.

"A suspect's waiver of his [or her] Fifth Amendment right to silence is valid only if made 'voluntarily, knowingly and intelligently.'" State v. Adams, 127 N.J. 438, 447 (1992) (quoting Miranda, 384 U.S. at 444). The State bears the burden of establishing beyond a reasonable doubt that a confession is knowing and voluntary. N.J.R.E. 104(c); State v. Nyhammer, 197 N.J. 383, 401 n.9 (2009). The determination of the voluntariness of a custodial statement requires an assessment of the totality of the circumstances surrounding the giving of the statement. State v. Roach, 146 N.J. 208, 227 (1996).

A Miranda waiver is invalid if police withhold the fact that an arrest warrant or criminal complaint has been issued. State v. A.G.D., 178 N.J. 56, 68 (2002). However, police are not required to inform a person of their status as a suspect. Nyhammer, 197 N.J. at 404-05 (finding a suspect knowingly and voluntarily waived his rights after being told he was being questioned about allegations against a third party and not told that the same allegations were made against him). Failure to inform a person that he is a suspect is a factor in determining whether a waiver of rights was knowing and voluntary. Id. at 405.

In his motion to suppress the statements he made to the detectives, defendant argues his waiver was not voluntary or intelligent because he was not advised he was going to be charged with murder. After hearing the testimony

and reviewing the videotaped recording of defendant's interviews, the judge issued a twenty-one page written opinion denying defendant's motion to suppress. The judge found defendant initiated the discussion with the detectives the second time and properly waived his rights prior to any questions or discussion about the investigation. The judge noted defendant's lack of knowledge or information about the charges was a factor in the totality of the circumstances analysis, but did not automatically evidence the involuntary nature of defendant's waiver of his rights. The judge determined it was clear defendant was a suspect in the stabbing and "the State has established beyond a reasonable [doubt] that there existed a knowing and voluntary waiver."

There was sufficient evidence that defendant's statement to the detectives was knowing, voluntary, and intelligent. The detectives honored defendant's right to remain silent when they left the room after the first interview. When defendant subsequently asked to speak with the detectives, the officers read the Miranda rights and began questioning defendant a second time. Defendant spoke willingly about the incident and did not reassert his Miranda rights, even after learning the victim had died.

The detectives were not required to tell defendant that he was a suspect or that the victim had died. Defendant was aware of his status as a suspect when

he was arrested at the scene of the crime. The detectives did not exert any physical punishment, mental exhaustion, or otherwise cajole defendant into giving a statement. The officers truthfully stated no charges had been brought against defendant. Both interviews were short. The first interview lasted two minutes and the second interview lasted approximately thirty-five minutes. Defendant's statement to the police was a product of his free will, and the detectives did not mislead him. Accordingly, the record supports the judge's denial of defendant's motion to suppress.

We next turn to defendant's argument that the prosecutor misstated the definition of recklessness during her summation. "Where a defendant fails to object to the challenged statements and thus deprives the trial judge of the opportunity to ameliorate any perceived errors, he must establish that the comments constitute plain error under Rule 2:10-2." State v. Feal, 194 N.J. 293, 312 (2008). Plain error must be "'sufficient [to raise] a reasonable doubt as to whether the error led the jury to a result that it otherwise might not have reached.'" Ibid. (quoting State v. Daniels, 182 N.J. 80, 102 (2004)). Failure to object to the prosecutor's statements at trial "indicates that defense counsel did not believe the remarks were prejudicial at the time," and "deprives the court of the opportunity" to address and cure the error. State

v. Timmendequas, 161 N.J. 515, 576 (1999) (citing State v. Irving, 114 N.J. 427, 444 (1989)).

"[P]rosecutors in criminal cases are expected to make vigorous and forceful closing arguments to juries." State v. Frost, 158 N.J. 76, 82 (1999). Prosecutors are granted wide latitude to make "fair comment" on the evidence so long as the argument stays within legitimate inferences that can be deduced from the evidence. See State v. Mayberry, 52 N.J. 413, 437 (1968). Prosecutors may not attempt to argue facts to the jury which are not supported by the record. Frost, 158 N.J. at 85.

For the first time on appeal, defendant claims that the prosecutor misstated the law in her closing arguments to the jury. Specifically, defendant contends the prosecutor's explanation of reckless conduct ignored the requirement of a "conscious disregard of a substantial risk," and instead improperly equated recklessness with an accident. Defendant asserts the jury heard two different definitions of recklessness, from the court and the prosecutor, and it cannot be determined whether the jury applied the correct legal standard in assessing the lesser manslaughter offenses. As such, defendant claims his conviction must be reversed.

The prosecutor did not misstate the law and her comments were proper. The prosecutor stated on at least nine separate occasions that the judge would instruct the jurors on the law. The judge gave the jury correct instructions regarding reckless

A-5141-16T1

conduct. The prosecutor's comments did not substantially prejudice defendant's fundamental right to have a jury fairly evaluate the merits of his defense or reach a verdict it otherwise would not have reached.

Moreover, the jury had more than ample evidence to conclude the victim's death was not an accident as defendant maintained. The victim was stabbed three times, including the fatal wound to his thigh. The State presented evidence in the form of videotapes from surveillance cameras, eyewitness testimony, and DNA evidence. Thus, even if the prosecutor's comments were improper, the jury had overwhelming evidence of defendant's guilt. We are not persuaded that the jury reached a verdict that it otherwise would not have reached but for the prosecutor's summation.

The arguments in defendant's pro se supplemental brief are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-5141-16T1