# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0205-17T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

TIMOTHY E. RAYFORD, a/k/a
TIMOTHY E. RAYFORD, SR.,
TIMOTHY RAYFORD,
TIMOTHY RAYFORD, SR.,
and TIMITHY RAYFORD,

      Defendant-Appellant.

_____

Submitted December 17, 2018 – Decided December 26, 2018

Before Judges Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-12-1076.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (James C. Brady,

Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On December 19, 2014, a Union County grand jury returned a ten-count indictment charging defendant with first-degree aggravated sexual assault of a minor, N.J.S.A. 2C:14-2(a)(1) (count one); two counts of second-degree sexual assault of a minor, N.J.S.A. 2C:14-2(b) (counts two and eight); first-degree aggravated sexual assault of a minor, N.J.S.A. 2C:14-2(a)(2)(a) (count three); second-degree sexual assault of a minor, N.J.S.A. 2C:14-2(c)(4) (count four); third-degree aggravated criminal sexual contact upon a minor, N.J.S.A. 2C:14-3(a) (count five); fourth-degree criminal sexual contact upon a minor, N.J.S.A. 2C:14-3(b) (count six); two counts of second-degree engaging in sexual conduct with a minor which would impair or debauch the morals of the child, N.J.S.A. 2C:24-4(a) (counts seven and nine); and fourth-degree child cruelty, N.J.S.A. 9:6-1 and N.J.S.A. 9:6-3 (count ten).

After Judge Regina Caulfield denied defendant's motion to suppress a recorded statement he gave to the police, defendant pled guilty to counts two and eight of the indictment. In accordance with the negotiated plea, Judge Caulfield sentenced defendant to a thirteen-year term on count two, subject to the 85% parole ineligibility provisions of the No Early Release Act (NERA),

N.J.S.A. 2C:43-7.2, with a five-year period of parole supervision upon release; and to a concurrent five-year term on count eight, subject to NERA, and with five years of parole supervision upon release. The judge also placed defendant on Parole Supervision for Life pursuant to N.J.S.A. 2C:43-6.4, and required him to comply with all Megan's Law registration and reporting conditions.

On appeal, defendant raises the following contentions:

> POINT I
>
> DEFENDANT'S STATEMENT MUST BE SUPPRESSED BECAUSE HE WAS INTOXICATED AND DID NOT UNDERSTAND THE MIRANDA[1] WARNINGS AT THE TIME HE GAVE HIS STATEMENT.
>
> A.    Introduction.
>
> B.    The Trial Court's Credibility Findings Were Based On Improper Factors.
>
> C.    Based On A Proper Assessment Of Defendant's Credibility, His Statement Was Not Freely And Voluntarily Given.

After reviewing the record in light of these contentions, we affirm.

At the two-day suppression hearing, Sergeant Patricia Gusmano testified that during the evening of July 30, 2014, she took a statement from the victim

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0205-17T3

and the victim's sister at the Union County Prosecutor's Office. While conducting the interviews, Sergeant Gusmano learned that defendant and his brother had appeared at the Linden police station, but then left to go to a coffee shop. Armed with the information obtained from the victim and her sibling, Sergeant Gusmano obtained approval to charge defendant with first-degree aggravated sexual assault and fourth-degree endangering the welfare of a child.

By that time, defendant had returned to the Linden police station, and Sergeant Gusmano asked the officers to take him into custody. Sergeant Gusmano, accompanied by Detective Vito Colacitti, arrived at the station at approximately 2:45 a.m. The sergeant spoke to defendant, who was sitting in a holding cell, and advised him of the charges. She then accompanied defendant to an interview room, gave him a Miranda form, and asked defendant to read his rights aloud and sign the form. After completing the form, defendant waived his right to an attorney and, over the course of the ninety-minute interview that followed, gave a detailed statement to Sergeant Gusmano during which he "admitted to some inappropriate sexual conduct with" the victim.

Sergeant Gusmano testified that defendant was "engaged," "cooperative," "clear-eyed," "capable," "competent," and "articulate" during the interview. Defendant did not claim he was intoxicated or tired, and the sergeant did not

detect the smell of alcohol during the interview. Defendant also did not tell the sergeant that he had any type of disability that prevented him from understanding her questions.

At the hearing, defendant testified that he had been drinking alcohol while he was at work on July 30, and then stopped at a friend's house to drink before he went home around 9:30 p.m. After being confronted by his wife and brother-in-law, defendant went to his brother's house. While there, defendant claimed he drank "three gulps" of vodka. He then went to his other brother's house, where he drank a twenty-four ounce can of beer, and got a "contact high" from being in the same room where other individuals "were smoking weed." Around midnight, defendant and his brother drove to the police station because they believed defendant was "want[ed] . . . for questioning."

Defendant testified that the police let him leave the station to get a cup of coffee. About forty-five minutes later, he and his brother returned with his coffee, but the police only allowed him to drink "three gulps of it" before they arrested him. Defendant alleged that Sergeant Gusmano told him that "he better admit to something or he will never see his kids again."

Defendant testified that he did not understand the Miranda form or the sergeant's explanation of his rights because he was intoxicated. Defendant also

A-0205-17T3

claimed he had "a hard time understanding words or reading" because he suffered from a disability that made him hear things "backwards and/or fast[.]" Defendant admitted that he had never been formally diagnosed with this disability, was not under a doctor's care, and did not take any medication to treat his alleged condition.

After reviewing the taped interview, Judge Caulfield rendered a thorough oral decision, denying defendant's motion to suppress his recorded statement. The judge found that Sergeant Gusmano fully informed defendant of his Miranda rights and he knowingly, voluntarily, and intelligently waived those rights. In rejecting defendant's claim that he was intoxicated when he spoke to the sergeant or unable to understand her because of his alleged disability, the judge stated:

> [T]he [c]ourt finds that during the statement, and although it was given for about one-and-one-half hours, from approximately 3 a.m. to 4:30 a.m. on July 31, 2014, the defendant appeared awake and alert, intelligent, articulate and responsive to all questions asked of him. His answers were appropriate to the questions, meaning they were in context and made sense. The defendant was engaged, when I mean engaged, was participating, lively at times, in the conversation and at times adding or changing answers he had previously given when pressed by the sergeant. At no time, to this [c]ourt, did the defendant appear sleepy or confused or under the influence of any

A-0205-17T3

substance. He did not seem drowsy, but seemed wide awake and attentive.

Thus, Judge Caulfield concluded that defendant's testimony that he was intoxicated or suffered from an undiagnosed disability was not credible and, instead, "was nonsensical and unbelievable." Therefore, she denied defendant's motion to suppress his recorded statement. This appeal followed.

On appeal, defendant again asserts he was too intoxicated and impacted by his alleged disability to voluntarily waive his Miranda rights, and that the judge erred by finding that his claims were not credible. We disagree.

The State bears the burden of establishing beyond a reasonable doubt that a confession is knowing and voluntary. State v. Nyhammer, 197 N.J. 383, 401 n.9 (2009). The State similarly bears the burden of proving beyond a reasonable doubt that a defendant waived his rights before making such a statement. State v. Carpenter, 268 N.J. Super. 378, 383-84 (App. Div. 1993).

"A suspect's waiver of his [or her] Fifth Amendment right to silence is valid only if made 'voluntarily, knowingly[,] and intelligently.'" State v. Adams, 127 N.J. 438, 447 (1992) (quoting Miranda, 384 U.S. at 444). The determination of the voluntariness of a custodial statement requires an assessment of the totality of the circumstances surrounding the giving of the statement. State v. Roach, 146 N.J. 208, 227 (1996). A court must look at the characteristics of the

A-0205-17T3

suspect, such as his or her age, education, intelligence, and prior encounters with the law.   State v. Galloway, 133 N.J. 631, 654-55 (1993).  It must also consider the nature of the interrogation, such as whether it was prolonged and resulted in the suspect's mental exhaustion and also, whether the suspect was subjected to physical or psychological coercion.  State v. Miller, 76 N.J. 392, 402 (1978).

The intoxication of a defendant does not automatically mean that he or she cannot knowingly and intelligently waive his or her Miranda rights.  State v. Warmbrun, 277 N.J. Super. 51, 61-62 (App. Div. 1994).  Rather, in applying the totality of the circumstances test, the court must consider whether the defendant spoke freely and with understanding, was able to correctly provide pedigree information, and was capable of narrating the past events and his or her participation in them.  Id. at 62, 64.  Once a statement is deemed admissible, the fact that a defendant was intoxicated affects only the weight of the confession.  State v. Bindhammer, 44 N.J. 372, 383-84 (1965).

We engage in a "'searching and critical' review of the record to ensure protection of a defendant's constitutional rights" when assessing the propriety of a trial court's decision to admit a police-obtained statement.  State v. Hreha, 217 N.J. 368, 381-82 (2014) (quoting State v. Pickles, 46 N.J. 542, 577 (1966)).  Nonetheless, we defer to the trial court's credibility and factual findings because

of the trial court's ability to see and hear the witnesses, and thereby obtain the intangible, but crucial, feel of the case. State v. Maltese, 222 N.J. 525, 543 (2015).

Applying these principles, we discern no basis for disturbing Judge Caulfield's well-reasoned determination that defendant voluntarily, knowingly, and intelligently waived his Miranda rights. After hearing and observing the witnesses as they testified, Judge Caulfield found that Sergeant Gusmano's testimony was credible, while defendant's was not. We defer to that credibility finding, which the judge fully explained in her written decision.

The judge's factual findings that defendant was neither intoxicated nor suffering from a disability that prevented him from understanding his rights are fully supported by the record and, in light of those facts, her legal conclusions are unassailable. We therefore affirm substantially for the reasons that Judge Caulfield expressed in her well-reasoned opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0205-17T3