**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0505-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CHRISTIAN CORTES,

     Defendant-Appellant.

_____

Submitted March 10, 2021 – Decided April 19, 2021

Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-07-1061.

Joseph E. Krakora, Public Defender, attorney for appellant (Tamar Y. Lerer, Assistant Deputy Public Defender, of counsel and on the briefs).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Christian Cortes appeals from a September 4, 2019 judgment of conviction for aggravated manslaughter pursuant to a negotiated plea agreement. We affirm.

I.

We discern the following facts from the record. On July 13, 2017, defendant purchased marijuana from Manuel Garcia. Shortly after the transaction, defendant was robbed, and he thought Garcia wronged him. The next day, July 14, 2017, defendant fired a handgun into a BMW owned by Garcia in New Brunswick. Defendant claimed he was unaware anyone was inside the vehicle and also asserted the BMW had blackened windows. Regrettably, Garcia's mother was in the vehicle and was struck in the neck with a bullet. She died a few days later as a result of the gunshot wound inflicted by defendant.

At approximately 2:00 a.m. on July 15, 2017, six to eight officers appeared at defendant's residence and transported him to police headquarters to question him about the shooting. Defendant asserted that the officers began questioning him in the police car on the way to headquarters. Sergeant Thierry Lemmerling and Detective Erika DiMarcello interviewed defendant from 4:10 a.m. until 5:37 a.m. Prior to conducting the video-recorded interview, DiMarcello read

2

defendant his Miranda[1] rights, and Lemmerling ensured defendant verbally confirmed he understood each right. Defendant signed a Miranda form acknowledging he was read and understood his rights, and he signed consent forms authorizing officers to search his apartment, vehicle, and cell phone, which was stolen.

Lemmerling and DiMarcello attempted to elicit information and a confession from defendant. Defendant challenged the officers' logic multiple times, including when Lemmerling remarked "I can tell you your exact route, just to prove to you that I'm not lying," to which defendant replied, "[t]hat doesn't mean I'm the shooter." Lemmerling and DiMarcello repeatedly emphasized the difference between "purposely killing someone and accidentally [killing someone]" in an attempt to have defendant corroborate their theory that he intended to shoot up Garcia's vehicle to send him a message and discharged the handgun without knowing the victim was inside. Eventually, defendant invoked his right to remain silent stating, "[s]o charge me, I'm done talking."

Thereafter, on July 15, 2017, defendant was charged with attempted murder, N.J.S.A. 2C:5-1(a)(1) and 2C:11-3(a)(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and second-degree possession

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1). Defendant remained in custody at the Middlesex County Department of Corrections (MCDC) after being charged.

On July 19, 2017, the victim of the shooting succumbed to her injuries and passed away. Later that day, defendant was served with an amended complaint at the MCDC adding the charge of first-degree murder, N.J.S.A. 2C:11-3(a)(1). On July 17, 2018, a Middlesex County Grand Jury returned Indictment Number 18-07-1061 charging defendant with: first-degree purposeful or knowing murder, N.J.S.A. 2C:11-3(a)(1) and/or (2) (count one); second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b) and 2C:2-6 (count two); and second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) and 2C:2-6 (count three).

Upon being served at the MCDC with the amended complaint, which included the murder charge, defendant made statements to DiMarcello and Sergeant Craig Marchak, after previously invoking his right to counsel. DiMarcello and Marchak told defendant they had no questions for him, and he did not need to speak with them. After serving the amended complaint and explaining the victim died, DiMarcello asked defendant if he had any questions and left.

4

Prior to trial, defendant moved to suppress his July 15, 2017 statement to police and statements he made when the police served him with the amended complaint, including the murder charge. Defendant claimed that the <u>Miranda</u> warnings administered to him at police headquarters were undermined by statements made to him en route and in an interview room before the recorded investigation commenced. According to defendant, he thought he "needed to give an interview to come back home." The State opposed the motion to suppress contending defendant voluntarily, knowingly, and willingly waived his <u>Miranda</u> rights.

The <u>Miranda</u> hearing was conducted on July 9, 2018. After hearing testimony from Lemmerling and defendant and reviewing the DVD of the interview, the trial court granted the motion to suppress, in part, and denied the motion, in part, finding the portion from the beginning until 5:32 a.m. was admissible and the portion after 5:32 a.m. was inadmissible. In finding certain statements admissible, the court stated:

> So the first observation that's pretty clear from this testimony is [defendant] is indeed a very bright, articulate young man. He's got an [associates degree] from an institution in the Bronx, in New York City. But it's clear from his interaction with the police that intellectually he's . . . a bright guy, and it's pretty . . . obvious . . . he's got the ability to read and understand . . . .

A-0505-19

The waiver was a little bit short . . . . It was buried in a question by . . . DiMarcello. But as case law has indicated, an express waiver is not necessarily required so long as it's clear that the defendant is waiving his rights and doing so freely, voluntarily, knowingly, and intelligently[,] [t]alking to the police.

But he's leaning over this form, and he's signing it, and he's reading it. It says, "I've been advised of my rights and understand what my rights are. I will voluntarily speak with you and answer questions." And he signs that. So although the spoken question about waiver is somewhat glossed over, it's here. And I do think the defendant . . . fully understood. I mean he didn't have to talk to the police.

It really becomes obvious quite frankly, he's no shrinking violet in this interview. He is going toe to toe with these officers. Arguing with them indeed. Not answering questions. Most of the talking was done by the detectives, not the defendant. I think he clearly understood. If he didn't want to answer, he wasn't going to answer. But at the end of this thing, he's the one who called it. He's the one who shut it down. A third detective, I forget his name, and really got confrontational with him. He said that's it, I'm done, and continued to say I'm done. . . . At that point they should have stopped, and the State concedes that.

After requesting an attorney, the trial court was convinced defendant clearly "knew how to control the situation," and "what his rights were." Defendant told the officers, "[j]ust charge me, my life is over." The court found defendant's testimony was "biased and skewed, and unrealistic" while

6

"downplaying his understanding of rights," and the testimony of Lemmerling to be credible.

At the March 22, 2019 suppression hearing, the trial court addressed the issue of statements defendant made when the officers served him with the new complaint and recordings of four phone calls defendant made to his girlfriend while incarcerated. Defendant ostensibly told his girlfriend he did not know the identity of the victim, and therefore, could not be found guilty of murder because logically speaking, he could not plan to kill someone he did not know. After viewing the recording of the interaction between DiMarcello, Marchak, and defendant at the MCDC, the court denied defendant's motion, concluding the initial interaction was not the functional equivalent of a custodial investigation. The court further found no Wiretap Act[2] issue because MCDC had the ability to intercept the calls to ensure the safety of its correctional officers and inmates.

On April 9, 2019, following jury selection, but before opening statements were made, defendant and the State entered into a negotiated plea agreement.[3] In exchange for defendant's plea of guilty, the State agreed to amend count one

---

[2] N.J.S.A. 2A:156A-1 to -37.

[3] The Middlesex County Assignment Judge approved the taking of the plea, which was made after the plea cut-off date. See R. 3:9-3(g).

to first-degree aggravated manslaughter and to dismiss the remaining counts of the indictment. Pursuant to Rule 3:9-3(f), defendant's guilty plea was conditional, and he preserved his right to appeal the trial court's ruling on the admissibility of his recorded statements to the police.

At his plea allocution, defendant admitted shooting a handgun knowingly and purposely at Garcia's vehicle, which constituted manifest extreme indifference to human life. The record shows the trial court conducted an extended colloquy with defendant at the outset of the plea hearing addressing his educational level and his understanding of his decision to forego a trial. The court used hypothetical scenarios to illuminate for defendant the practical effect of the plea on his constitutional rights and his potential sentencing exposure. Ultimately, the court accepted defendant's guilty plea, finding it was entered "freely, voluntarily, knowingly and intelligently." Pursuant to Rule 3:9-3(f), defendant's plea was conditional insofar as he preserved his right to appeal the trial court's rulings regarding his recorded statement and phone calls to his girlfriend from prison.

Defendant then moved to withdraw his guilty plea on the basis of ineffective assistance of counsel and a colorable claim of innocence. During oral argument on August 28, 2019, defendant's newly assigned counsel argued:

(1) defendant lacked the requisite "manifest indifference to human life" necessary to sustain a conviction for first-degree aggravated manslaughter; and (2) his prior counsel was ineffective for not meeting with him enough, not discussing trial strategy, failing to explain the difference between reckless manslaughter and aggravated manslaughter, and pressuring him to accept the plea agreement because counsel was unprepared for trial. Defendant and his prior counsel testified at the August 28, 2019 hearing.

The trial court denied defendant's motion after analyzing the four Slater[4] factors. Noting a "stark" credibility issue, the court found defendant had a "motive to lie" while his former counsel did not. In addition, the court concluded that defendant did not have a colorable claim of innocence.

On September 4, 2019, defendant was sentenced to sixteen years' imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, in addition to mandatory fines and penalties. This appeal ensued.

Defendant raises the following issues on appeal:

> POINT I
>
> BECAUSE OFFICERS MISREPRESENTED THE LAW, MADE INAPPROPRIATE PROMISES OF LENIENCY, AND INAPPROPRIATELY

---

[4] State v. Slater, 198 N.J. 145 (2009).

MINIMIZED THE OFFENSE, DEFENDANT'S STATEMENT MUST BE SUPPRESSED.

POINT II

BECAUSE THERE IS AN INSUFFICIENT FACTUAL BASIS THAT DEFENDANT COMMITTED AGGRAVATED MANSLAUGHTER, THE PLEA MUST BE VACATED.

## II.

Defendant argues the trial court erred in admitting his July 15, 2017 statement to police because the State failed to prove beyond a reasonable doubt that he knowingly, intelligently, and voluntarily waived his Miranda rights. He contends his Miranda waivers were invalidated by the officers' misrepresentation of the law, making inappropriate promises of leniency, and minimizing the offenses.

We "engage in a 'searching and critical' review of the record to ensure protection of a defendant's constitutional rights" when assessing the propriety of a trial judge's decision to admit a police-obtained statement. State v. Hreha, 217 N.J. 368, 381-82 (2014) (quoting State v. Pickles, 46 N.J. 542, 577 (1966)). In performing our review, we defer to the trial judge's credibility and factual findings because of the trial judge's ability to see and hear the witnesses, and

A-0505-19

thereby obtain the intangible but crucial "feel" of the case. State v. Maltese, 222 N.J. 525, 543 (2015) (quoting Hreha, 217 N.J. at 382).

To warrant reversal, a defendant must show the admission of the statement was error "clearly capable of producing an unjust result." Ibid. (quoting R. 2:10-2). In our review of the denial of a suppression motion, we defer to the trial judge's findings so long as they are "supported by sufficient credible evidence." State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). We will not reverse a trial court's findings of fact based on its review of a recording of a custodial interrogation unless the findings are clearly erroneous or mistaken. Id. at 381.

"A suspect's waiver of his [or her] Fifth Amendment right to silence is valid only if made 'voluntarily, knowingly and intelligently.'" State v. Adams, 127 N.J. 438, 447 (1992) (quoting Miranda, 384 U.S. at 444). The State bears the burden of establishing beyond a reasonable doubt that a confession is knowing and voluntary. N.J.R.E. 104(c); State v. Nyhammer, 197 N.J. 383, 401 (2009).

The determination of the voluntariness of a custodial statement requires an assessment of the "totality of all the surrounding circumstances" related to the giving of the statement. State v. Roach, 146 N.J. 208, 227 (1996) (citations

11

omitted).  In reviewing the totality of circumstances, the court considers the following factors: a suspect's age, education, intelligence, prior contacts with the criminal justice system, length of detention, advisement of constitutional rights, the nature of the questioning, and whether physical punishment or mental exhaustion were involved in the interrogation process.  State ex rel. A.S., 203 N.J. 131, 146 (2010) (quoting State v. Presha, 163 N.J. 304, 313 (2000)).

If a defendant's invocation of his or her right to silence is clear and unambiguous, it must be "scrupulously honored."  S.S., 229 N.J. at 384 (quoting State v. Johnson, 120 N.J. 263, 282 (1990)).  If the invocation is ambiguous, officers are permitted to clarify the defendant's ambiguous words or acts.  Id. at 382-83 (citing Johnson, 120 N.J. at 283-84).  The trial court must make a fact-sensitive inquiry whether, under the totality of the circumstances, the officers could have "reasonably" concluded that the defendant's "words or conduct . . . [were] inconsistent with [his or her] willingness to discuss [the] case with the police . . . ."  Id. at 382 (quoting State v. Bey, 112 N.J. 123, 136 (1988)).

Here, the record demonstrates defendant was properly advised of his Miranda rights, and his waiver of those rights was made knowingly and intelligently.  The trial court correctly held the State had proven defendant's statements were made freely and voluntarily in the totality of the circumstances.

12

State v. Cook, 179 N.J. 533, 563 (2004); State v. Galloway, 133 N.J. 631, 654 (1993).

Defendant also contends Lemmerling and DiMarcello misrepresented the law to him during the July 15, 2017 interrogation. Specifically, defendant alleges the officers "misrepresented the law on homicide," when they suggested that "the reasoning [for the shooting] is what's going to save you here from a much longer extended term. The difference between purposely shooting somebody and accidentally shooting somebody." Further, defendant argues Lemmerling told him he "needed to give an interview to come back home."

At the time he gave his July 15, 2017 statement, the court emphasized defendant "is a very sharp individual" and "there is no way an individual as bright as [defendant] would put any stock into" Lemmerling's alleged statement that defendant had to be interviewed before going home. As astutely pointed out by the trial court, "[c]learly by how [defendant] interacted with police, he was not going for such a thing." The officers did not exert any physical punishment, mental exhaustion, or otherwise cajole defendant into giving a statement. We agree with the trial court that defendant freely waived his right to remain silent up until 5:32 a.m. The trial court's findings are supported by

sufficient credible evidence in the record. We see no reason to disturb the determination to admit a portion of the statements.

III.

We next address defendant's argument that the trial court erred by not vacating his guilty plea because there was an insufficient factual basis that he committed aggravated manslaughter. A determination of whether to allow a defendant to withdraw a guilty plea lies within the sound discretion of the trial court and will be reversed "only if there was an abuse of discretion which renders the lower court's decision clearly erroneous." State v. Simon, 161 N.J. 416, 444 (1999) (citing State v. Smullen, 118 N.J. 408, 416 (1990)). In all plea withdrawal cases, "the burden rests on the defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits." Slater, 198 N.J. at 156 (quoting Smullen, 118 N.J. at 416).

"Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plea, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome before he will be allowed to withdraw his plea." Simon, 161 N.J. at 444 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

A court must consider and balance four factors when evaluating a motion to withdraw a guilty plea: "'(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.'" State v. Munroe, 210 N.J. 429, 442 (quoting Slater, 198 N.J. at 157-58). "No single Slater factor is dispositive; 'if one is missing, that does not automatically disqualify or dictate relief.'" State v. McDonald, 211 N.J. 4, 16-17 (2012) (quoting Slater, 198 N.J. at 162).

With respect to the first factor, "[a] bare assertion of innocence is insufficient to justify withdrawal of a plea." Slater, 198 N.J. at 158. Instead, "[d]efendants must present specific, credible facts and, where possible, point to facts in the record that buttress their claim." Ibid. There must be more than just a "change of heart" to warrant leave to withdraw a guilty plea once entered. Id. at 157.

According to Slater, the second factor, the nature and strength of defendant's reasons for withdrawal, "focuses on the basic fairness of enforcing a guilty plea by asking whether defendant has presented fair and just reasons for withdrawal, and whether those reasons have any force." Id. at 159. Although

A-0505-19

we are not to approach the reasons for withdrawal with "skepticism," we "must act with 'great care and realism' because defendants often have little to lose in challenging a guilty plea." Id. at 160 (quoting State v. Taylor, 80 N.J. 353, 365 (1979)).

With respect to the third Slater factor, whether the plea was entered as the result of a plea bargain, the Court noted that "defendants have a heavier burden in seeking to withdraw pleas entered as part of a plea bargain." Ibid. However, the Court did "not suggest that this factor be given great weight in the balancing process." Id. at 161.

As to the fourth factor, unfair prejudice to the State or unfair advantage to the accused, the Court stated that there was "no fixed formula to analyze the degree of unfair prejudice or advantage that should override withdrawal of a plea" and that "courts must examine this factor by looking closely at the particulars of each case." Ibid. The "critical inquiry . . . is whether the passage of time has hampered the State's ability to present important evidence." Ibid. The State need not show prejudice "if a defendant fails to offer proof of other factors in support of the withdrawal of a plea." Id. at 162.

In accepting defendant's guilty plea, the trial court highlighted, "I'm satisfied [defendant] provided a factual basis for first[-]degree aggravated

16

manslaughter and he is in fact guilty of that offense." Moreover, we note that defendant's motion was limited to withdrawal of his guilty plea only, and not a motion to vacate a guilty plea for lack of a factual basis. Although defendant addresses the Slater factors in his brief, he never argues his plea lacked an adequate factual basis.

Indeed, at the plea allocution hearing, the trial court inquired whether defense counsel disputed the factual basis, and his response was "No-no-no." The following colloquy ensued between the court and defense counsel:

> The Court: And I went in - - I went into more detail as to the distinction of two species of manslaughter. And [defendant] gave responses consistent with an appropriate factual basis. You don't dispute that, do you?
>
> Defense Counsel: No, I don't Your Honor.
>
> [(emphasis added).]

Because defendant did not move before the trial court for his plea to be vacated based on a lack of an adequate factual basis, our review is under the plain error standard. R. 2:10-2. Under the plain error standard, any errors or omissions should be disregarded "unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. "Plain error is a high bar . . . ." State v. Santamaria, 236 N.J. 390, 404 (2019). "The 'high standard'

17

used in plain error analysis 'provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error.'" Ibid. (quoting State v. Bueso, 225 N.J. 193, 203 (2016)).

Generally speaking, a motion to withdraw a plea before sentencing should be liberally granted. State v. Deutsch, 34 N.J. 190, 198 (1961). The burden is on the defendant to show why the plea should be withdrawn. State v. Huntley, 129 N.J. Super. 13, 17 (App. Div. 1974). The trial judge has considerable discretion in deciding such a motion, although he or she should take into account the interests of the State. State v. Bellamy, 178 N.J. 127, 135 (2003); State v. Luckey, 366 N.J. Super. 79, 87 (App. Div. 2004). But where, as here, the plea is part of a knowing and voluntary plea bargain, defendant's "burden of presenting a plausible basis for his request to withdraw . . . is heavier." Huntley, 129 N.J. Super. at 18. A voluntary plea should not generally be vacated absent "some plausible showing of a valid defense against the charges." State v. Gonzalez, 254 N.J. Super. 300, 303 (App. Div. 1992).

Our Court has previously noted that "[t]he factual basis for a guilty plea can be established by a defendant's explicit admission of guilt or by a defendant's acknowledgment of the underlying facts constituting essential elements of the crime." State v. Gregory, 220 N.J. 413, 419 (2015) (citing State v. Campfield,

213 N.J. 218, 231 (2013)). The elements of aggravated manslaughter are that defendant: (1) causes death; (2) recklessly; (3) under circumstances manifesting extreme indifference to human life. State v. Curtis, 195 N.J. 354, 364 (App. Div. 1984). The distinction between aggravated manslaughter and reckless manslaughter is the third element, which is not required to prove reckless manslaughter. Ibid.

At defendant's plea hearing, the court specifically inquired of defendant whether he understood and agreed that he had acted under circumstances manifesting extreme indifference to human life:

> The Court: Now he [your counsel] asked you about under circumstances manifesting extreme indifference to human life. What that translates into in common parlance is not just that it's possible that you're go[ing to] hit somebody or kill somebody, but under all the totality of the circumstances that it's actually probable that that would happen.
>
> Do you agree with that notion?
>
> Defendant: Yes, sir.

Defendant also responded in the affirmative when his attorney laid the factual basis and asked him, "[a]nd not only was it reckless, but it was under circumstances manifesting extreme indifference to human life because by shooting the gun you could hit anybody that's on the street . . . correct?"

After carefully weighing the Slater factors, the balance disfavors allowing withdrawal of defendant's guilty plea. Defendant has failed to establish that a manifest injustice would result if he is not permitted to vacate his guilty plea. Consequently, we conclude that the trial court did not abuse its discretion in denying defendant's motion to vacate.

IV.

We next address defendant's assertion that his counsel was ineffective, renewing his argument made before the trial court that his counsel did not meet with him a sufficient amount of times at the jail, did not discuss trial strategy or conduct investigations as he requested, and failed to explain the difference between reckless manslaughter and aggravated manslaughter.

"[C]ourts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). The standard for determining whether trial counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984) and adopted by our Court in State v. Fritz, 105 N.J. 42, 58 (1987).

To prevail on a claim of ineffective assistance of counsel, defendant must meet the two-pronged test establishing both that: (1) counsel's performance was deficient, and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's right to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

A defendant commits aggravated manslaughter when he or she "recklessly causes death under circumstances manifesting extreme indifference to human life[.]" N.J.S.A. 2C:11-4(a)(1). "Aggravated manslaughter is a lesser-included offense of murder." State v. Galicia, 210 N.J. 364, 400 (2012) (Albin, J., dissenting) (citation omitted). Reckless manslaughter is a lesser-included offense of aggravated manslaughter. State v. Ruiz, 399 N.J. Super. 86, 97 (App. Div. 2008) (citing State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1994)).

Under the facts presented here, defendant has failed to demonstrate trial counsel was ineffective under the Strickland/Fritz test because the record lacks credible evidence to support this claim. The trial court considered the testimony of defendant and determined he was incredulous, while his prior counsel was

21

not. Specifically, the trial court emphasized the transparent testimony from prior counsel that the Public Defender's office was disputing the amount of his bill claiming it was excessive, thereby countering defendant's argument counsel was not diligent.

Moreover, the record shows that a Public Defender investigator served defendant with discovery. We also reject defendant's contention that he only intended to cause property damage to Garcia's vehicle, not rising to the level of aggravated manslaughter. And, discovery revealed that the shooting took place at 10:30 a.m. while Garcia's vehicle was moving—clearly indicative of someone being inside the car. One bullet struck the victim and lodged in the passenger-side door, and the other bullet was found on the driver's side hood of the vehicle. In addition, the State produced a photograph illustrating the BMW only had tinted glass on the driver side and passenger windows, contrary to defendant's representation.

The facts and evidence show defendant acted intentionally and knowingly rather than with mere recklessness. We note the State initially proposed a thirty-year term of imprisonment for the charge of murder, significantly higher than the sixteen-year sentence defense counsel obtained for defendant. We are satisfied the record does not support an ineffective assistance of counsel claim.

A-0505-19

V.

After counsel filed their briefs, we decided State v. Sims, ___ N.J. Super. ___ (App. Div. 2021). Pursuant to Rule 2:6-11(d),[5] both counsel submitted letters to this court addressing their respective positions vis-à-vis our decision. In Sims, we concluded that the right to be informed a criminal complaint has been filed, or an arrest warrant has been issued, also extends "to an interrogee who was arrested and questioned prior to any charges being filed, where the arrest was based upon information developed through an earlier police investigation." Id. at ___ (slip op. at 2).

In Sims, we detailed principles espoused by our Supreme Court in State v. A.G.D., 178 N.J. 56 (2003), and State v. Vincenty, 237 N.J. 122 (2019). In A.G.D., our Court held that a defendant's waiver of Miranda rights is invalid when police fail to inform the defendant a criminal complaint has been filed, or

---

[5] Rule 2:6-11(d) provides, in relevant part:

> Letter to Court After Brief Filed. No briefs other than those permitted in paragraphs (a) and (b) of this rule shall be filed or served without leave of court. A party may, however, without leave, serve and file a letter calling to the court's attention, with a brief indication of their significance, relevant published opinions issued, or legislation enacted or rules, regulations and ordinances adopted, subsequent to the filing of the brief.

an arrest warrant has been issued. 178 N.J. at 58-59. And, in Vincenty, the Court extended its holding in A.G.D. to add that interrogating officers not only need to inform an individual that a criminal complaint or arrest warrant was filed, but the officers must also notify the suspect of the specific charges. 237 N.J. at 126.

In the matter under review, defendant was not under arrest when he was transported to police headquarters to be interviewed. Therefore, the A.G.D./Vincenty rule, further extended in Sims, was not triggered. We conclude our holding in Sims is inapplicable to defendant here, and no remand or reversal is warranted on that basis.

Any remaining arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0505-19