**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0607-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

KASHIFE H. WYCKOFF,

      Defendant-Appellant.

_____

Argued January 27, 2022 – Decided February 7, 2022

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 18-08-0751.

Joseph A. Fischetti, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Joseph A. Fischetti and Camila A. Garces, Designated Counsel, on the briefs).

Stephen C. Sayer, Assistant Prosecutor, argued the cause for respondent (Jennifer Webb-McRae, Cumberland County Prosecutor, attorney; Stephen C. Sayer, of counsel and on the brief).

PER CURIAM

A Cumberland County grand jury charged defendant Kashife H. Wyckoff in a four-count indictment with third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1) (count one); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (count two); fourth-degree possession of hollow point bullets, N.J.S.A. 2C:39-3(f)(1) (count three); and second-degree possession of a handgun by a convicted person, N.J.S.A. 2C:39-7(b)(1) (count four). Following a multi-day trial, the jury convicted defendant of the three weapons offenses, but found him not guilty of the drug possession charge.

The trial judge sentenced defendant to an extended sixteen-year prison term with eight years of parole ineligibility on the possession of a handgun by a convicted person charge; a concurrent eight-year term with four years of parole ineligibility on the possession of a handgun charge; and a concurrent eighteen-month term on the possession of hollow point bullets charge. Thus, defendant's aggregate term was sixteen years with eight years of parole ineligibility.

Defendant appeals his convictions and sentence. We affirm.

A-0607-19

# I.

The charges against defendant arose from the allegations that he possessed the handgun and hollow point bullets the police found in a backpack seized on June 6, 2018. On that date, a citizen called the police and reported there was someone with a gun at a specific location in Vineland. Officer Angel Tellado and another patrol officer responded. When they arrived, Tellado saw three individuals in a row near the curb. Defendant wore a black hat with a yellow brim and a black backpack sat near his feet.

As Tellado waited for additional officers to arrive, he saw one of the other two men pick up the black backpack and hand it to the second man. That man then placed it back on the ground. Tellado testified that none of the men reached into the backpack at any time.

After the backup officers arrived, they ordered the three men to get on the ground. Tellado approached and picked up a blue bag that was near one of the other men and moved it out of the way. Tellado then picked up the black backpack. As he did so, Tellado noticed the backpack "was partially opened" and he "immediately saw the butt of a gun." Tellado yelled to the other officers that he found a gun and walked the backpack to the other side of the street.

A-0607-19

Tellado took the handgun out of the backpack, ejected a magazine loaded with hollow point bullets, and removed a hollow point bullet from the chamber of the weapon. Tellado found a second magazine in the backpack, together with defendant's birth certificate, and a receipt for $1,300 bearing the name of defendant's former spouse. The police arrested defendant and took him to the station.

A detective read defendant his Miranda[1] rights and he stated he did not wish to give a statement. Tellado then took defendant to the "juvenile room" for processing. Once there, defendant asked Tellado, "where's my receipt?" Tellado testified: "And at the time, I didn't know what he was talking about so I said[,] 'What receipt,' as I'm inquiring and he said[,] 'It's in my bag.' And we had already put it in evidence."

Surveillance footage from a nearby building showed that earlier that day, an individual wearing a black hat with a yellow brim exited a car carrying a black backpack. Tellado identified the man as defendant.[2]

On appeal, defendant raises the following contentions:

> I.  THE TRIAL COURT DID NOT FULFILL ITS FACT-FINDING RESPONSIBILITY WHEN

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] Defendant did not testify and did not present any witnesses on his own behalf.

4

DENYING [DEFENDANT'S] MOTION TO SUPPRESS THE GUN.

II.    THE TRIAL COURT ERRED IN ADMITTING [DEFENDANT'S] ALLEGED STATEMENT TO POLICE BECAUSE POLICE ELICITED THE UNRECORDED STATEMENT IN VIOLATION OF [DEFENDANT'S] RIGHT TO REMAIN SILENT.

III.   THE TRIAL COURT ERRED IN DENYING [DEFENDANT'S] PRE-VERDICT AND POST-VERDICT MOTIONS FOR JUDGMENT OF ACQUITTAL BECAUSE NO REASONABLE JURY COULD HAVE FOUND BEYOND A REASONABLE DOUBT THAT [DEFENDANT] LACKED A GUN PERMIT.

IV.    IN THE ALTERNATIVE, THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

A.     The Trial Court Erred By Finding That No Mitigating Factors Applied.

B.     The Trial Court Double-Counted [Defendant's] Prior Convictions, Using Them to Sentence Him to an Extended Term and as an Aggravating Factor. (Not raised below).

C.     The Trial Court Abused Its Discretion in Imposing a Sentence on the Certain-Persons Offense that was Within the Extended-term Range.

## II.

In Point I, defendant argues the trial judge erred in denying his pre-trial motion to suppress the handgun. We disagree.

The judge conducted an evidentiary hearing concerning defendant's motion and Tellado was the only witness. Tellado's account was consistent with his trial testimony. He stated he could see "the butt of the gun" in the partially opened backpack as soon as he picked it up. Tellado moved the backpack across the street, took out the gun, and removed the magazine and the bullet in the chamber from the weapon. Tellado placed these items on top of a white plastic bag. The State presented a photograph of these items at the hearing.

On redirect examination, the prosecutor asked Tellado several questions about the white plastic bag:

> [Prosecutor]: What is this a photo of?
>
> [Tellado]: This is the photo of the weapon and the magazine that was inside the bag.
>
> [Prosecutor]: Okay. And, when you took the weapon and the magazine out of the backpack, was it also in this white bag?
>
> [Tellado]: I just remember the butt of the gun at this point.

6

Defense counsel asked some follow-up questions concerning the white plastic bag:

> [Defense Counsel]: Okay. Referring to that photograph and the gun and the magazine and one live round depicted in this photograph, do you agree that the photograph, the magazine [and the] live round are in a white bag[,] correct?
>
> [Tellado]: It's laying on the bag[,] yes.
>
> [Defense Counsel]: Right. And where is it you believe that white bag came from?
>
> [Tellado]: It's quite possible from inside the bag itself.
>
> [Defense Counsel]: And, it's possible that the gun and the clip [and] the round magazine were all in that white bag[,] right?
>
> [Tellado]: The magazine was inside the weapon, and it was loaded with one in the chamber.
>
> [Defense Counsel]: Okay. And, they were all inside that white bag?
>
> [Tellado]: It's quite possible. I just reached for the weapon to make it safe.
>
> [Defense Counsel]: Okay. Okay. While it was inside the bag, inside this white bag? If you can remember.
>
> [Tellado]: I -- could have been, again, I just remember reaching for the weapon and making it safe.

7

A-0607-19

The trial judge found that Tellado's testimony about his discovery of the gun was credible. The judge stated he had "an opportunity to watch . . . Tellado testify." The judge found that Tellado's "body language [was] consistent with what it is that he's talking about, describing the events that occurred in real time on the video screen."[3] The judge found that Tellado saw the gun in plain view through the partially unzipped opening in the backpack when he picked it up. After Tellado moved the backpack across the street, he fully unzipped it, took out the gun, made it safe by removing the magazine and the bullet, and found the other contents.

When reviewing an order denying a motion to suppress evidence, we accept a trial judge's findings of fact if they are supported by sufficient credible evidence in the record. State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). Deference should be afforded to a trial judge's findings when they are "substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161 (1964).

Applying this deferential standard, we discern no basis for disturbing the judge's denial of defendant's suppression motion. The plain view doctrine

---

[3] The State presented body-cam footage taken by the police officers at the scene.

A-0607-19

allows seizures without a warrant so long as an officer is "lawfully . . . in the area where he observed and seized the incriminating item or contraband, and it [is] immediately apparent that the seized item is evidence of a crime." State v. Gonzales, 227 N.J. 77, 101 (2016). Tellado satisfied both prongs of this test. He reported to the scene in response to a call involving a person with a gun. He immediately saw the butt of the handgun in the backpack as soon as he picked it up and knew it was evidence of a possible crime. Under these circumstances, Tellado's seizure of the handgun and the subsequent discovery of the other items in the backpack were unimpeachable.

Defendant argues that the judge erred by not making a specific finding whether the gun was inside the white plastic bag at the time Tellado found it. If the gun was inside the plastic bag, defendant asserts Tellado would not have been able to see it. Defendant also contends the judge improperly left this issue for the jury to resolve at trial.

Defendant's arguments lack merit. As stated above, the judge clearly found in his oral opinion that Tellado credibly testified he saw the butt of the gun inside the partially opened backpack. This finding that the gun was visible to Tellado was an express rejection of defendant's argument that the gun was in an "opaque" plastic bag that shielded it from the officer's plain view.

Moreover, the judge specifically found that Tellado could not recall whether any part of the gun was in the plastic bag. This finding is well supported by the record. Tellado stated it was possible the gun was in the bag inside the backpack, but he could not remember whether this was the case. All the officer could remember was "reaching for the weapon and making it safe" after he observed the butt of it through the open zipper. Thus, the judge fully considered defendant's argument and found no factual basis for it in the record.

The judge did comment that the jury could consider Tellado's testimony at trial and determine under the "reasonable doubt" standard "what occurred or how that gun actually got there . . . ." However, this remark appears to have been directed to defendant's overall contention that the gun did not belong to him and he did not place it in the backpack.

As noted, the judge specifically addressed the issue presented at the suppression hearing, that is, whether the gun was in Tellado's plain view. Because the judge's findings of fact on that issue are supported by sufficient credible evidence in the record, we reject defendant's contention on this point. Gamble, 218 N.J. at 424.

A-0607-19

III.

Defendant next argues that the trial judge erred by permitting the State to introduce his statement to Tellado concerning the receipt found in the backpack. This argument also lacks merit.

The judge conducted a N.J.R.E. 104 hearing just before Tellado testified at trial to address the admissibility of the statement. Tellado's testimony was substantially similar to his presentation at the trial as summarized above. Tellado stated that defendant declined to make a statement after he received his Miranda warnings. At that point, Tellado took him into another room to process him. Defendant asked, "where's my receipt[?]" Tellado asked "about what receipt he was talking about[.]" Defendant "said the receipt was in his bag."

The judge denied defendant's request to suppress this statement because defendant initiated the conversation with the officer. When Tellado asked "[w]hat receipt are you talking about?[,]" the judge found the officer was not subjecting defendant to "custodial interrogation because . . . there was no question from the officer that was directed to . . . [d]efendant[] that was meant to invoke some type of an incriminating response."

Defendant contends Tellado should not have been permitted to ask defendant what receipt he meant because he had already stated he did not want

to waive his <u>Miranda</u> rights.  Therefore, defendant asserts the judge erred by failing to suppress defendant's response to Tellado's question.

In reviewing the denial of a motion to suppress for an alleged violation of <u>Miranda</u>, we use a "searching and critical" standard of review to protect a defendant's constitutional rights.  <u>State v. Maltese</u>, 222 N.J. 525, 543 (2015) (quoting <u>State v. Hreha</u>, 217 N.J. 368, 381-82 (2014)).  We defer to a trial court's fact findings on a <u>Miranda</u> motion if supported by sufficient credible evidence. <u>Ibid.</u> (citing <u>Hreha</u>, 217 N.J. at 382).  We do not, however, defer to a trial judge's legal conclusions, which we review de novo.  <u>State v. Rockford</u>, 213 N.J. 424, 440 (2013).

The State bears the burden to prove, beyond a reasonable doubt, that the interrogating officers have complied with <u>Miranda</u>.  <u>State v. Yohnnson</u>, 204 N.J. 43, 59 (2010).  The trial judge must examine the totality of the circumstances. <u>State v. Adams</u>, 127 N.J. 438, 447-48 (1992).

After considering these precedents, we detect no error in the judge's decision to admit defendant's statement.  Defendant's remark was the type of "unexpected incriminating statement[] made by in-custody defendants in response to non-investigative questions by the police" that do not violate <u>Miranda</u>.  <u>State v. Mallozzi</u>, 246 N.J. Super. 509, 516 (App. Div. 1991).  Tellado

merely asked defendant to clarify what receipt he was talking about after defendant initiated the conversation while he was being processed following his arrest. A statement is admissible when it is "voluntarily blurted out by an accused in custody where the police have not subjected him to an interrogative technique . . . ." State v. Ward, 240 N.J. Super. 412, 419 (App. Div. 1990). As we explained in Ward, "the police surely cannot be held accountable for the unforeseeable results of their words or actions . . . ." Id. at 418 (quoting Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980)). Therefore, the judge did not err in permitting the State to introduce defendant's statement.

However, even if we could conclude the judge committed an error, we would deem it harmless beyond a reasonable doubt because other evidence in the record overwhelmingly demonstrated the backpack belonged to defendant. Tellado found defendant's birth certificate in the backpack. The receipt that defendant admitted was in his bag bore the name of his former spouse. The State also obtained surveillance video of defendant carrying a black backpack earlier that day. Accordingly, the admission of defendant's statement did not constitute reversible error.

A-0607-19

## IV.

In Point III, defendant argues the trial judge erred by denying his pre-verdict and post-verdict motions for acquittal on the gun possession charges. Defendant asserts the State never presented evidence that he did not possess the required permit to possess a handgun and, therefore, the jury should not have convicted him. This argument lacks sufficient merit to warrant extended discussion in this opinion. R. 2:11-3(e)(2).

N.J.S.A. 2C:39-2(b) clearly states that "[w]hen the legality of a person's conduct under this chapter depends on his possession of a license or permit . . . it shall be presumed that he does not possess such a license or permit . . . until he establishes the contrary." In denying defendant's motions, the trial judge relied upon our Supreme Court's decision in State v. Ingram, where the Court found that this statutory presumption passed constitutional muster. 98 N.J. 489, 500 (1985). The Court stated:

> [W]e hold that (1) the absence of a required permit is an essential element of a weapons offense as defined under N.J.S.A. 2C:39-5; (2) once possession of a weapon is shown and an accused fails to come forward with evidence of a permit, the State may employ the statutory presumption of N.J.S.A. 2C:39-2 to establish the absence of the required permit; and (3) a jury should be instructed that although such a statute authorizes the inference that there is no such permit, the ultimate burden of persuasion rests on the State, with the jury

being at liberty to find the ultimate fact one way or the other.

> [Ibid.; see also State v. Carrion ___ N.J. ___, ___ (2021) (slip op. at 20-21) (confirming that N.J.S.A. 2C:39-2(b) "creates a statutory presumption in favor of the State if a defendant fails to present a firearm permit," so long as the trial judge properly instructs the jury in the manner required by the Court's decision in Ingram).]

Here, the State established that defendant possessed the handgun and defendant did not present any evidence he had the required permit. The trial judge also gave the jury the instruction mandated by Ingram. Under these circumstances, the judge properly denied defendant's motions for an acquittal.[4] Therefore, we reject defendant's contention on this point.

## V.

Finally, defendant asserts that his sentence was excessive because the judge did not correctly apply the aggravating and mitigating factors and imposed too lengthy of an aggregate term. Again, we disagree.

---

[4] Defendant concedes in his appellate brief that the Ingram decision is "binding precedent," which we must follow. See White v. Twp. of N. Bergen, 77 N.J. 538, 549-50 (1978) (stating that trial and intermediate appellate courts are "bound, under the principle of stare decisis, by formidable precedent" of the Supreme Court). "Notwithstanding this binding precedent," however, defendant states he "presents this argument to preserve it for potential presentation to the Supreme Court."

A-0607-19

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention[,]" and "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 64 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for that of the trial court. Id. at 65.

We are satisfied the judge made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably credible evidence in the record and applied the correct sentencing guidelines enunciated in the Code. The judge's decision to impose a sixteen-year aggregate term with eight years of parole ineligibility was fully supported. Accordingly, we discern no basis to second-guess the sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-0607-19